(562 P.2d 445)
No. 48,396

STATE OF KANSAS, *Appellee*, v. DEAN ALLEN and D. E. ROSEBAUGH, *Appellants.*

Opinion filed February 25, 1977.

*Lawrence P. Ireland,* of Topeka, for the appellant.

*Albert D. Keil,* assistant district attorney, *Curt T. Schneider,* attorney general, and *Gene M. Olander,* district attorney, for the appellee.

FOTH, J.: Defendants Dean Allen and D. E. Rosebaugh were convicted by a Shawnee county jury of promoting obscenity. Each was sentenced to six months in the county jail and fined $1,000, and each was paroled from the jail term and ordered to pay one-half the costs. They appealed their convictions to the

Supreme Court, which transferred the case to this court for hearing and determination under K.S.A. 1976 Supp. 20-3018 (*a*).

The convictions arose out of defendants' operation of Dean's Bookstore in Topeka in the summer of 1974. In June, July and August of that year plainclothes detectives of the Topeka Police Department made a series of "buys" from the book store. The materials purchased were presented to a district judge in an application for a search warrant. The judge heard sworn testimony from one of the officers, which was duly recorded and transcribed, and issued a search warrant for the defendants' premises. Officers executing the warrant seized publications thought to be obscene which, together with the 19 previously purchased, brought the total to 158. Multicount informations were initially filed against each defendant, but these were later dismissed. They were replaced by the present information which, in one count, charges both defendants with promoting obscenity based on 144 named booklets and magazines.

Defendants filed two pretrial motions. The first was to suppress the exhibits seized under the search warrant, based on alleged irregularities in the application procedure. The denial of this motion was designated as a point on appeal and was briefed, but the point was specifically abandoned at oral argument and will not be considered further.

The second motion was to dismiss the information, based primarily on the alleged unconstitutionality of the statute under which the defendants were charged. The allegation is that the statute was overbroad and too vague to support a conviction. The trial court overruled the motion, and the correctness of this ruling is, in our view, the dispositive issue on appeal.

The obscenity statute then in force, K.S.A. 1973 Supp. 21-4301, made it a class A misdemeanor under subsection (1) (*b*) to knowingly or recklessly possess any "obscene" material with intent to sell or otherwise disseminate it. The definition portion of the same statute, subsection (2) (*a*), provided:

"Any material or performance is 'obscene' if, considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and the material is patently offensive and utterly without redeeming social value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be intended for distribution to children or any other especially susceptible audience."

The origins of this statutory language were recently reviewed at length by our Supreme Court in *State v. Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P. 2d 760 (1976). They need not be reviewed here except to note that the language was designed and intended to comport with the obscenity definition first announced in *Roth v. United States,* 354 U. S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957), and reformulated in *Memoirs v. Massachusetts,* 383 U. S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975 (1966). At the time the statute was adopted in 1969, *Memoirs* was the latest word from Washington on what could and what could not be prohibited as "obscene" under the First Amendment, as made applicable to the states through the Fourteenth.

Since then the United States Supreme Court has further refined its thinking in this area, most notably in *Miller v. California,* 413 U. S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973). That case altered the tripartite *Memoirs* definition of obscenity, as incorporated in our statute, in two respects. Essentially unaltered is the requirement that the material, taken as a whole, appeal to prurient interest according to an average person applying contemporary community standards. But, as noted by our Supreme Court in *"The Bet,"* the high court in *Miller* abandoned the requirement that the material be found "utterly without redeeming social value." Instead, it is enough that the material, "taken as a whole, lacks serious literary, artistic, political, or scientific value." (413 U. S. at 24.) To this extent the prosecutor's task is made easier; a mere modicum of social value will no longer "redeem" an otherwise obscene work.

That change does not concern us here; the one we are concerned with is the change which presented the chief issue in *"The Bet,"* *i.e.,* the new constitutional requirement that to be obscene the work must depict or describe in a patently offensive way "sexual conduct specifically defined by the applicable state law." (*Ibid.*)

Our statute, as written, did not meet this portion of the *Miller* standards, arguably in two respects. First, it was not clearly restricted to sexual conduct, but apparently included nudity, among other things, without requiring any sexual connotation. Second, the conduct whose description or depiction would fall beyond the pale was not "specifically defined."

This, however, was not necessarily fatal. The *Miller* court said

that the required specificity could be found in a state statute as written "or authoritatively construed." (*Ibid.*) The conviction in *Miller* was vacated and the case remanded for a state court determination of whether the California statute there in question could be construed to meet the newly announced standard. The Court also noted that "[o]ther existing state statutes, as construed *heretofore or hereafter,* may well be adequate." (413 U. S. 24, n. 6. Emphasis added.)

In "*The Bet*" the Kansas Supreme Court accepted this invitation to state judicial action and "authoritatively construed" the statute involved here to incorporate the *Miller* standards, including a list of "specifically defined" representations or descriptions which are to be deemed obscene. (The 1976 legislature also acted, amending 21-4301 to incorporate at least some of the conduct proscribed under the statute as construed in "*The Bet.*" Laws 1976, ch. 159, § 1.)

Defendants' argument is this: their conduct occurred in 1974; the *Miller* requirement of specificity, either statutory or judicial, had been enunciated in 1973; the Kansas Supreme Court did not read the required specificity into the Kansas statute until "*The Bet*" was decided in 1976. Hence, they argue, at the time they acted the statute was overbroad and did not give them the "fair notice" they were entitled to under the due process clause of the Fourteenth Amendment. See, *e.g., Papachristou v. City of Jacksonville,* 405 U. S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839; *Coates v. City of Cincinnati,* 402 U. S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686; *Palmer v. City of Euclid,* 402 U. S. 544, 29 L. Ed. 2d 98, 91 S. Ct. 1563. To apply the 1976 construction found in "*The Bet*" to their 1974 conduct, they say, would be a retroactive application which would deny them due process of law.

The state's response to this argument (and the trial court's, in overruling the defendants' motion to dismiss) is that the statute had previously been "authoritatively construed" to meet the *Miller* standards in *State, ex rel., v. A Quantity of Copies of Books,* 197 Kan. 306, 416 P. 2d 703 (1966). In that case, operating without a statutory definition, the court was required to determine whether the books in question were "obscene" under the then effective statute, K.S.A. 21-1102. It applied the definition which had but recently been formulated in *Memoirs* and, characterizing the books as "hard core pornography," found them obscene under the *Memoirs* standard.

We are hard pressed to see how that case helps the state here. It was summarily reversed by the United States Supreme Court in *A Quantity of Copies of Books et al. v. Kansas*, 388 U. S. 452, 18 L. Ed. 2d 1314, 87 S. Ct. 2104, with no reason given except a reference to *Redrup v. New York*, 386 U. S. 767, 18 L. Ed. 2d 515, 87 S. Ct. 1414. From an examination of the latter we can only surmise that in the high court's view the books in question were not obscene, but instead were immune from seizure under the First Amendment.

But quite apart from the loss of force necessarily flowing from the reversal, the Kansas court's opinion itself seems to have little bearing on the issue of specificity. The conclusion as to the books was "that the dominant theme of the material taken as a whole appeals to a prurient sexual interest of the average person and that the material is patently offensive because it goes beyond and affronts contemporary community standards relating to the description of sexual matters." (197 Kan. at 311.) This, it appears, is nothing more than the test of *Memoirs.* and our present statute. While the court does say that the books deal with sexual matters, neither in this language nor in the balance of the opinion is there any suggestion that only "specifically defined" sexual conduct is subject to the statute's ban. The case may limit obscenity under the statute to the area of sex, but if specificity is what we are looking for, we simply cannot find it in *A Quantity of Copies of Books.*

Our view of that case is reinforced by our Supreme Court's decision in *"The Bet."* After reviewing the history of obscenity regulation in this state and in the decisions of the United States Supreme Court, our court concluded:

"Obscene materials, for the purposes of state government regulation, is no longer meaningfully defined except within constitutional guidelines explicated by the United States Supreme Court. *The definition of such term 'obscene material' in our state statute appears overbroad* and is therefore susceptible of authoritative judicial construction conformable with the guidelines and authorized regulatory pattern articulated in *Miller* and other federal cases." (219 Kan. at 70. Emphasis added.)

The court then proceeded to determine whether it was justified in saving the constitutionality of the statute by judical construction, or whether it could only invalidate it and leave the problem

to the legislature. Concluding that the former course was justified, the court went on:

> "*We now authoritatively construe* and hold the word 'obscene' is a word of constitutional meaning and, as used in K.S.A. 21-4301 and related statutes such as K.S.A. 22-3901, *et seq.*, regulating or prohibiting obscenity, it embraces materials and performances which are patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." (Id. at 71. Emphasis added.)

The "materials and performances" embraced in this definition were those given by the *Miller* court as examples of the type of conduct which could be "specifically defined" by a state statute, either as written or as judicially construed. It seems apparent to us that if this type of specificity had already been read into our statutes in *A Quantity of Copies of Books*, as the state urges, the court would have taken an entirely different tack in "*The Bet.*" It certainly would not have found that the statute at that time appeared "overbroad." Neither would it have found it necessary, in 1976, to "now" authoritatively construe the statute to incorporate the constitutionally mandated specificity.

It therefore appears that in 1974, when defendants offered their material for sale, the statute under which they were later convicted did not meet the specificity requirements of *Miller*, either as written or as theretofore construed. The question then becomes whether we can now apply to these defendants a statutory construction of the statute which was adopted (in "*The Bet*") almost two years after this conduct.

In "*The Bet*" the construction there adopted was applied to the case then before the court. That was, however, a civil proceeding aimed at enjoining future showings of the motion pictures there involved, and at abating an alleged nuisance. Insofar as the injunction was upheld the judgment operated only prospectively. The court also ordered destruction of the films, presumably on the premise that as concededly obscene materials (under any standards) they could be put to no legitimate future use. Even so, this part of the decision, together with the allowance of attorney fees, struck the dissenters as an imposition of penal sanctions which could not be done retroactively. Here, of course, we are dealing *only* with penal sanctions.

Other state courts which have faced the *Miller* requirements

armed at best with a *Roth-Memoirs* statute have fallen into two initial groups. There are those which, like our court, have construed their statute to meet *Miller,* and there are those which have declined to engage in what they conceived to be judicial legislation. The former group is largely collected, cited and followed in the majority opinion in *"The Bet"*; the latter group is cited in the dissent. The majority notes, however, that in the decisions relied on "the courts have held that their obscenity statutes, though not couched in the language of *Miller,* should be judicially construed in a manner consistent with *Miller* and thereby evade constitutional challenge *in the future."* (219 Kan. at 70-71. Emphasis added.)

Examination of those nine cases reveals the following: In *State v. Papp,* 298 So. 2d 374 (Fla. 1974); *People v. Heller,* 33 N. Y. 2d 314, 352 N. Y. S. 2d 601, 307 N. E. 2d 805 (1973); and *Price v. Commonwealth,* 214 Va. 490, 201 S. E. 2d 798 (1974), the court determined that the state statute had been authoritatively construed to conform to the *Miller* standards *prior* to the criminal conduct under consideration. In each case the conviction was affirmed.

In *State, ex rel., v. Vixen,* 35 Ohio St. 2d 215, 301 N. E. 2d 880 (1973) and *State ex rel. Wampler v. Bird,* 499 S. W. 2d 780 (Mo. 1973), the court found the material under consideration to be obscene under *Miller* standards, and a proper subject for *injunctive* relief. Procedurally these cases are analogous to *"The Bet"* in making a prospective application of the *Miller* standards.

*State v. Welke,* 298 Minn. 402, 216 N. W. 2d 641 (1974); *State v. Harding,* 114 N. H. 335, 320 A. 2d 646 (1974); and *State v. De Santis,* 65 N. J. 462, 323 A. 2d 489 (1974), were all criminal cases in which the court recognized that it was construing the applicable statute to meet *Miller* for the first time. In each case the court held that the new construction could not be applied to the case at bar, and reversed the conviction before it.

Only in *State v. J-R Distributors, Inc.,* 82 Wash. 2d 584, 512 P. 2d 1049 (1973), did the court apply what was apparently a new construction of an obscenity statute to prior conduct in a criminal case. The preface to the opinion in that case indicates it was written prior to *Miller* but handed down afterwards. The court noted in the preface that the intervention of *Miller* and its companion cases caused no change in the result, although it had

required some revision of the language of the opinion. The retroactivity issue obviously could not have been raised or briefed by the parties, and it was not discussed in the opinion. Neither was the issue discussed in *Gibbs v. State*, 255 Ark. 997, 504 S. W. 2d 719 (1974), the only other state case called to our attention where an indisputably new *Miller* construction of the statute was applied to past conduct.

In the federal field the most troublesome case is *Hamling v. United States*, 418 U. S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974). That was a prosecution under 18 U. S. C. § 1461 for sending through the mails material which was alleged to be, in the language of the statute, "obscene, lewd, lascivious, indecent, filthy or vile." The defendants were convicted and their convictions were affirmed by the United States Court of Appeals for the Ninth Circuit prior to *Miller*. Rehearing was denied after and in the light of *Miller*, and on certiorari the United States Supreme Court affirmed.

To the defendants' contention that the statute was unconstitutionally vague under the *Miller* standards, the Court's answer was that its *prior construction* of the statute, and particularly that in *Roth v. United States*, supra, had already limited the scope of the statute to hard core pornography. That was sufficient, it said, to meet *Miller*. The examples given in *Miller* of the type of pornography which might be regulated were said to be just that—examples and nothing more. It was not required that those examples or any other conduct be enumerated in the statute, either as written or construed.

"The *Miller* cases, important as they were in enunciating a constitutional test for obscenity to which a majority of the Court subscribed for the first time in a number of years, were intended neither as legislative drafting handbooks nor as manuals of jury instructions. Title 18 USC § 1461 had been held invulnerable to a challenge on the ground of unconstitutional vagueness in *Roth*; the language of *Roth* was repeated in *Miller*, along with a description of the types of material which could constitutionally be proscribed and the adjuration that such statutory proscriptions be made explicit either by their own language or by judicial construction; and *United States v. 12 200-ft. Reels of Film*, supra, made clear our willingness to construe federal statutes dealing with obscenity to be limited to material such as that described in *Miller*." (418 U. S. at 115.)

To an argument that "fair warning" requires statutory enumeration of prohibited conduct, based on cases such as *Bouie v. City of Columbia*, 378 U. S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697, the

Court replied: "But the enumeration of specific categories of material in *Miller* which might be found obscene did not purport to make criminal, for the purpose of 18 U. S. C. § 1461, conduct which had not previously been thought criminal. That requirement instead added a 'clarifying gloss' to the prior construction and therefore made the meaning of the federal statute involved here 'more definite' in its application to federal obscenity prosecutions." (*Id.* at 116.)

It may therefore be argued that under *Hamling* a prior construction of an obscenity statute which merely made it conform to *Roth* is sufficient also to meet *Miller.* The New Jersey supreme court, in *State v. De Santis*, supra, rejected that argument. Speaking of *Hamling*, the *De Santis* court said: "A bare majority of the Court found that the federal obscenity statute (18 U. S. C. § 1461) had, well prior to *Miller*, been 'authoritatively construed in a manner consistent with *Miller*' (94 S. Ct. at 2905) and that consequently the defendant had fair notice and due warning though his conviction preceded *Miller.* Doubts may be expressed as to whether the few cases it relied on truly support its finding, but that need not be pursued here since the federal obscenity statute is not our present concern." (65 N. J. 467-68.)

The court went on to discuss the Minnesota decision in *State v. Welke*, supra, and the New Hampshire case, *State v. Harding*, supra. It concluded:

"We are persuaded that the course taken in *Welke* and *Harding* is the fairest one and should be followed in the consolidated appeals before us. The statute under which the defendants were convicted satisfied *Memoirs* but did not meet the specificity requirement of *Miller*; nor did our judicial precedents satisfy *Miller's* demand that the prohibited hardcore sexual conduct be 'specifically defined by the applicable state law, as written or authoritatively construed.' 413 U. S. at 24, 93 S. Ct. at 2615, 37 L. Ed. 2d at 430. . . .

"Neither our statute nor our precedents gave the defendants the fair notice and due warning required by *Miller*; accordingly their convictions must be set aside." (65 N. J. at 471-72.)

The Minnesota court decided *State v. Welke*, supra, prior to *Hamling.* It accepted the *Miller* invitation to construe, and found the materials in question obscene under any standards. But it went on to say:

"The conviction, nevertheless, cannot stand because defendant did not have that clear notice of the legislative proscription which fundamental fairness requires. The necessity of a clear warning is particularly important, moreover, when

a line is to be drawn between protected and unprotected speech." (298 Minn. at 411.)

"Neither as written nor as construed at the time of this defendant's arrest did the ordinance comport with the requirement of specificity imposed by Miller. Since fair notice is the basic rationale for the requirement of specifically defined sexual conduct, we are not persuaded that a present construction of the ordinance affords requisite notice with respect to a sale made over 4 years ago." (*Id.* at 412.)

The New Hampshire court, also writing before *Hamling*, said in *State v. Harding*, supra:

"Since various members of the Supreme Court of the United States have expressed dissatisfaction over their inability to frame definite standards in the area of obscenity so as to provide fair warning to those prosecuted under the obscenity statutes, and since the *Miller* opinion recognized this inability and stressed the need for specificity under state laws as written or authoritatively construed, it would not be correct to say that the defendant had sufficient warning about the obscene nature of the material in issue and it would be a denial of due process to convict the defendant in this case under a statute that was construed on review to encompass his acts." (Syl. 11.)

All three state courts, in talking about "fair notice," "due warning," "clear warning," and "sufficient warning," are using language generally employed in dealing with allegations of vagueness. While closely related, overbreadth and vagueness are distinct concepts. A statute which is overbroad makes conduct criminal which is constitutionally protected (see *e.g., Zwickler v. Koota,* 389 U. S. 241, 19 L. Ed. 2d 444, 88 S. Ct. 391, and cases cited at 389 U. S. 250). One that is vague leaves the ordinary person to guess as to its meaning and as to whether any particular conduct is criminal or not. (See, *e.g., State v. Conley,* 216 Kan. 66, 531 P. 2d 36; *Zwickler v. Koota,* supra.) The distinction is not sharply drawn in *Miller,* or in *Hamling,* or in the New Jersey, Minnesota and New Hampshire cases quoted above. Even though lack of specificity would seem to be an element of vagueness, from *Hamling* it appears that the specificity requirement of *Miller* deals solely with overbreadth. If so, the New Jersey court, at least, misread *Miller.*

One thing is clear, however, and that is that either defect will be fatal unless new life is breathed into the statute by judicial resuscitation. In *"The Bet"* our statute was found by our Supreme Court, in 1976, to be "overbroad." A lifesaving feat of judicial construction was accomplished. Prior to that time, it appears to us, the statute was if not dead at least moribund. We, like the

three state courts just referred to, would hesitate to apply a statute which is *either* facially overbroad or facially vague to conduct occurring before the requisite authoritative judicial construction. As Mr. Justice White, dissenting in *Coates v. City of Cincinnati,* supra, observed on the question of standing:

"Our cases . . . recognize a different approach where the statute at issue purports to regulate or proscribe rights of speech or press protected by the First Amendment. [Citations omitted]. Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And *if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute."* (402 U. S. at 619-20. Emphasis added.)

That language was quoted approvingly in *Gooding v. Wilson,* 405 U. S. 518, 521, 31 L. Ed. 2d 408, 92 S. Ct. 1103.

The issue of standing, to which those remarks were addressed, is also inherent in the facts of this case. Counsel for the defendants conceded on oral argument that the material in question here is "obscene" under any definition, including *Roth, Memoirs, Miller,* or any combination of them. Our independent examination of random samples of the exhibits persuades us that the concession was advisedly made. This alone, however, does not deprive the defendants of standing to raise the constitutional issue of overbreadth. We are here dealing with First Amendment rights, with respect to which a unique set of rules has been developed. See *Gooding v. Wilson* and *Coates v. City of Cincinnati,* supra.

In *Dombrowski v. Pfister,* 380 U. S. 479, 486-7, 14 L. Ed. 2d 22, 85 S. Ct. 1116, the Court said:

"[W]e have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. [Citations omitted]. We have fashioned this exception to the usual rules governing standing [citation omitted] because of the '. . . danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' *NAACP v. Button* [371 U. S. 415, 433, 9 L. Ed. 2d 405, 83 S. Ct. 328]."

We therefore conclude that defendants here, whose conduct would doubtless fall within the prohibition of the statute as narrowly construed in *"The Bet,"* may nevertheless challenge the statute as being facially overbroad.

Our Supreme Court found in *"The Bet"* that such a challenge was meritorious. We therefore hold that, at the time defendants' conduct occurred, our obscenity statute was unconstitutionally overbroad and they could not be convicted under it consistently with due process.

The convictions are reversed and the case is remanded with directions to discharge the defendants.