No. 48,319

Kansas City Millwright Company, Inc., *Appellee*, v. F. Kent Kalb, Successor to Harold A. Armold, Director of Taxation, State of Kansas, *Appellant*.

(562 P. 2d 65)

Opinion filed March 5, 1977.

*Benjamin J. Neill,* of department of revenue, argued the cause, and *William N. Lacy,* of department of revenue, was with him on the brief for the appellant.

*Murray F. Hardesty,* of Hardesty, Hall & Schlosser, Chartered, of Topeka, argued the cause, and *Bryon R. Schlosser,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: The question presented by this appeal is the constitutionality of K. S. A. 1974 Supp. 79-3603 (*p*) (now K. S. A. 1976 Supp. 79-3603 [*p*]). The district court of Shawnee County found this section of the statute vague and ambiguous and held it void and unconstitutional.

Kansas City Millwright Company, Inc., (plaintiff-appellee) is a Kansas corporation engaged in the original construction and repair of buildings and structures including repair, fabrication and construction of grain elevators, repair, fabrication and installation of large factory conveyor systems, repair of platforms and footings for grain elevators, and general grain elevator maintenance. The precise nature of the various undertakings by the appellee will be presented in detail later in the opinion.

On July 1, 1970, the legislature enacted the law imposing a tax

on services. (L. 1970, ch. 389, § 2 [p].) That law, 79-3603 (p), *supra,* reads:

"[A] tax at the rate of three percent (3%) upon the gross receipts received from the installation, maintenance, servicing and repairing of tangible personal property not held for sale in the regular course of business, whether or not any tangible personal property is transferred in conjunction therewith, except services rendered in installing property in connection with the original construction of a building or structure, which when installed will become a part of such building or structure."

On November 17, 1972, the appellee was audited by the Kansas Department of Revenue, Sales Tax Division, for the period of July 1, 1970, through September 30, 1972. Alleged unreported taxable sales in the amount of $882,321.12 were determined, upon which the tax assessed amounted to $26,469.66, plus interest of $1,778.12, and penalty of $2,646.97, resulting in a total assessment for tax, interest and penalty of $30,894.75.

On May 22, 1973, the original assessment was amended to show alleged unreported taxable sales of $432,663.21. A tax of $12,979.92, interest of $894.57, and penalty of $1,298.00 were assessed, making the amended total of the proposed deficiency $15,172.49.

On August 16, 1973, the appellee disputed the amount of taxes in a hearing before the Director of Taxation. The Director of Taxation sustained an assessment of $11,997.92 in taxes, $787.55 in interest, and $1,199.79 in penalty, for a total of $13,985.26. All of the assessment constituted sales tax allegedly due in accordance with the terms of 79-3603 (p), *supra.*

On March 25, 1974, the appellee requested a hearing before the Board of Tax Appeals pursuant to K. S. A. 74-2438. The appellee contended "the services were performed in the original construction of the building or structures and are nontaxable, the services and repairs were done to real property and thereby not taxable, some of the work was done as a subcontractor and not taxable," and it further contended 79-3603 (p), *supra,* is invalid for vagueness and uncertainty and should not be enforced against the taxpayer.

On June 13, 1974, after hearing, the Board ordered that sales taxes in the amount of $11,997.92 were due and should be paid by the appellee. The additional interest payment of $787.55 and penalty payment of $1,199.79 allegedly due *were left to the discretion of the Director of Taxation with the recommendation of the Board that these charges be dropped from the amount due.* On this matter the Board said:

". . . [T]he Board feels that there was complete honesty and cooperation on the part of the appellant in this matter and as such recommends that the

penalty and interest charges be dropped from the amount due, as a matter of equity."

The Board denied authority to determine the issue of constitutionality.

On July 15, 1974, the appellee appealed to the district court of Shawnee County again asserting that the labor charges which had been subjected to the sales tax were performed in the original construction of a building or structure, in the repair of real property or fixtures, or as a subcontractor and, therefore, were not subject to the Kansas Retailer's Sales Tax. The appellee further asserted that 79-3603 (p), *supra*, was unconstitutional because it failed to distinctly state the object of taxation as required by Article 11, Section 5 of the Kansas Constitution.

On January 12, 1976, the district court sustained the appellee's motion for partial summary judgment and held 79-3603 (p), *supra*, vague and ambiguous and thus void. It ordered the $11,997.92 in question, previously deposited with the clerk by the appellee, to be returned to the appellee. The reasons given by the trial judge for his decision are stated in the journal entry. It reads:

"In reading the pertinent statute, on the face of it, the language seems clear that a sales tax incident is present at any time that one installs, maintains, services or repairs tangible personal property not held for sale in the regular course of business, except services rendered in installing this tangible personal property in connection with the original construction of a building or structure, which will become a part of such.

"Thus, it would appear that an independent contractor or subcontractor who installs tangible personal property or who may repair, maintain or service tangible personal property, is liable for the sales tax unless he is installing tangible personal property as part of the original construction of a building or structure.

"If this same person installs tangible personal property on an existing building or structure the incident would be subject to sales tax. This latter principle would seem obvious from the reading of the statute. But, this is not the case, as interpreted by the Director of Taxation.

"It appears that the Director has interpreted 79-3603 (p) to mean that there is no tax incident so long as the services are done on real estate or fixtures so attached to real estate that they were part of the real estate, regardless whether the tangible personal property is installed in the original construction of a building or structure. This may be a fair delineation except determining what is, and when, personal property becomes real estate is not that simple a matter. The intent of the parties is one of the controlling factors. In addition, there is nothing in the statute exempting the installation of tangible personal property in real estate or as part of the real estate except in cases of original construction of the building or structure.

"The Director admits that the statute is subject to more than one interpreta-

tion, and as is permitted by statute, the Director has issued administrative rulings regarding the taxability of certain services under the pertinent statute. But in doing so, and to strengthen the point of vagueness, the Director has failed to be consistent in determining the taxable incident.

"Rulings by the Department of Revenue, as cited in KANSAS DEPARTMENT OF REVENUE BULLETIN, state that charges for labor incurred in painting a building are not subject to sales tax as painting constitutes a repair of real estate rather than the installation of tangible personal property. Likewise, an electrician's labor in rewiring a building is not subject to the Retailer's Sales Tax since that labor constitutes the repair of real estate. However, labor performed by a plumber in re-plumbing a building is subject to a sales tax as his labor represents the installation of tangible personal property. Labor performed in replacing or installing guttering on a building is taxable as the Department determined this act constituted the installation of personal property. Labor attributable to re-roofing a building is not taxable as the Department determined this act constituted the repair of real estate. In addition repairs done to a garage are not subject to a sales tax as the labor constitutes repair of real estate, whereas, replacing a garage door is considered installation of tangible personal property and thus a taxable incident. These are some examples of inconsistency in interpreting 79-3603 (p).

"In reading the pertinent statute and the various rulings, a taxpayer would have no definitiveness in determining a taxable incident by a mere reading of the statute and rulings. In this case even the Department of Revenue staff has difficulty in interpreting the statute, as reflected by the transcript of hearing before the Director of Taxation on August 16, 1973.

"The Court finds that the pertinent statute is void and unconstitutional in that it is so vague and ambiguous that any penalty prescribed for its violation constitutes a denial of due process of law. A reading of the statute requires the doing of an act in terms so vague that men of reasonable intelligence must necessarily guess at its meaning and differ as to its application."

The Director of Taxation has duly perfected an appeal.

The Director of Taxation is required to enforce the Kansas Retailers' Sales Tax Act, and the Secretary of Revenue "shall adopt rules and regulations for the administration of this act" (K. S. A. 1976 Supp. 79-3618), but no administrative regulations have been adopted to govern collection of the tax imposed by 79-3603 (p), supra. (See generally K. A. R. § 92-19-1, et seq., which discusses the Kansas Retailers' Sales Taxes.)

K. S. A. 1976 Supp. 79-3604 levies the tax upon the consumer or user and obligates the consumer or user to pay the tax to the retailer. It also imposes the obligation to collect the tax upon the retailer. Under K. A. R. 92-19-4 the retailer is required to keep and preserve such records as are necessary to determine the amount of the tax "for which he is liable under the act."

By definition "Retail Sales" or "Sale at Retail" includes all sales made within the state of services, and "Retailer" includes a person

regularly engaged in the business of furnishing services. ( K. S. A. 1976 Supp. 3602 [e] and [d].)

Under K. S. A. 79-3615 *any person who fails to pay any tax, when required to do so by the provisions of the Kansas Retailers' Sales Tax Act* is subject to a penalty of twenty-five percent (25%) of the amount of such tax, together with interest at the rate of one percent (1%) per month from the date the tax was due until paid; and in addition thereto any person who fails "to pay any tax herein provided . . . shall, upon conviction thereof, be fined not less than one hundred dollars ($100), nor more than one thousand dollars ($1,000), or be imprisoned in the county jail not less than one (1) month, nor more than six (6) months, or be both so fined and imprisoned, in the discretion of the court."

The appellee in this case is a contractor in the construction business. A brief *amicus curiae* was filed herein by the Kansas Builders Chapter of Associated General Contractors of America. Basically we are confronted with the interpretation of a tax statute that materially affects construction contractors in Kansas.

Briefly summarized, we have a sales tax statute, which in its operation not only makes the contractor *the agent for the state* and *liable* for the collection of the sales tax, but further subjects him to *penalties and criminal liability* if he mistakenly interprets its provisions. If the contractor makes a mistake in interpreting the act the burden falls on the contractor and not upon the consumer from whom the tax is meant to be collected.

K. S. A. 1976 Supp. 79-3604 provides in part:

". . . [I]t shall be the duty of each and every retailer in this state to collect from the consumer or user, the full amount of the tax imposed by this act . . . and such tax shall be a debt from the consumer or user to the retailer, when so added to the original purchase price. . . ."

The parties and *amicus* agree the basic test as to what constitutes an unconstitutionally vague and indefinite statute is stated in *Connally v. General Const. Co.*, 269 U. S. 385, 70 L. Ed. 322, 46 S. Ct. 126. There the current rate of wages in the locality was to be paid to persons employed by or on behalf of the State of Oklahoma. In holding the words "current rate of wages" and "locality" were vague, the United States Supreme Court enunciated the rules to be applied. The court said:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law.

And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. . . ." (p. 391.)

(See also *Cramp v. Bd. of Public Instruction,* 368 U. S. 278, 7 L. Ed. 2d 285, 82 S. Ct. 275; *Morra v. State Board of Examiners of Psychologists,* 212 Kan. 103, 510 P. 2d 614; and 16 Am. Jur. 2d, Constitutional Law, § 552, p. 951.)

Since the Kansas Retailers' Sales Tax Act provides for monetary fines or imprisonment, or both, for violating the provisions of the act, the rule in *Connally* must be applied.

The court in *Connally* goes on to point out that statutes which employ terms that have a technical meaning understood by those who are to be affected by the statute, or employ terms that have a well settled meaning at common law, are generally upheld when attacked for being vague or indefinite. The appellant concedes the words used in 79-3603 ( *p* ) are not technical in nature.

Our Kansas cases have employed virtually the same test as originally stated in *Connally,* only adding that if the words used in a statute have been previously judicially construed, the statute will not be considered vague. In *Unified School District No. 255 v. Unified School District No. 254,* 204 Kan. 282, 463 P. 2d 499, the court held:

"A statute will not be declared void for vagueness and uncertainty where it employs words commonly used, previously judicially defined, or having a settled meaning in law." ( p. 288.)

At its heart the test for vagueness is a commonsense determination of fundamental fairness.

There are three terms used in 79-3603 ( *p* ), *supra,* which cause particular concern to those liable for the collection of the tax. The first term is "tangible personal property"; the second term is "original construction"; and the third term is "structure."

Regarding "tangible personal property," the Department of Revenue states that it was the obvious intention of the legislature not to tax the maintenance, servicing and repairing of real property. This is a reasonable interpretation and we agree, but it presents serious problems for the contractor. One problem arises in determining what is "tangible personal property," the maintenance, servicing and repairing of which is taxable, and what is real estate, the maintenance, servicing and repairing of which is not taxable. In this connection a determination must be made as to what is the

*installation* of tangible personal property and what is the maintenance, servicing and repairing of real estate. The distinction between tangible personal property and real estate is material in two areas, *installation* involved in original construction on the one hand, and maintenance, servicing and repairing on the other.

The problem is complicated by the Kansas test for determining whether or not personal property has become a fixture and, as such, a part of the real estate. In *Water Co. v. Irrigation Co.*, 64 Kan. 247, 67 Pac. 462, it was stated:

"The tests to be applied in determining whether or not personal property becomes a fixture are: (1) Annexation to the realty; (2) adaptation to the use of that part of the realty with which it is connected; (3) the intention of the party making the annexation to make the article a permanent annexation to the freehold. . . ." (pp. 252-253.)

(See also *Bromich v. Burkholder*, 98 Kan. 261, 158 Pac. 63; and 35 Am. Jur. 2d, Fixtures, § 4, p. 702.)

Where an intention to permanently annex tangible personal property to real estate on the part of the party making the annexation is required before tangible personal property becomes a fixture, there appears to be no single statement in our law defining fixtures which is capable of application in all situations. Most modern authorities recognize the practical difficulties in formulating a comprehensive principle for determining what are fixtures, and hold that the determination can only be made from a consideration of all the individual facts and circumstances attending the particular case. (35 Am. Jur. 2d, Fixtures, § 1, p. 700.)

Clearly, it would be impossible for a layman to apply the tests set forth in *Water Co. v. Irrigation Co.*, supra, with any degree of certainty. This is especially true when we consider that one portion of the test is concerned with the intention of the parties.

Now let us consider some of the labor performed by the appellee. It has repaired stairways and handrails; performed additions and alterations to many buildings; fabricated and installed conveyor systems; repaired, remodeled and updated conveyor systems; constructed foundations for installation of equipment in new and old buildings; repaired pieces of equipment which have been installed and become a part of the buildings in which they are located; remodeled buildings by installing new wall partitions and replacing partitions; fabricated and installed platforms, loading docks, ladders and handrails; repaired buildings to increase the weight load capacities of floors and ceilings; repaired and anchored steel columns in buildings; dropped ceilings; painted walls; installed windows;

reinforced concrete settings; anchored pulleys used to move railroad freight cars by cable; and repaired all components of grain elevators including the rebuilding of the gallery structure of a grain elevator destroyed by fire.

When is the appellee repairing real estate? When is it installing tangible personal property? When is it involved in the original construction of a structure?

The business of the appellee appears to be particularly affected by the uncertainty inherent in 79-3603 (p), *supra*. In one case the legal department of the Owens Corning Company decided that a labor service charge for the overhaul of a large oven used for drying fiberglass was not taxable. The appellee did not charge the sales tax. Then the Department of Revenue in its audit determined the particular service was taxable, thus indicating even attorneys have trouble interpreting the statute.

The Chief of the Sales and Excise Tax Bureau of Kansas, Mr. Harry O'Riley, testified:

"In about a year's time, less than that, maybe in six months' time, approximately around 500 opinions were written by the Legal Department with what guidelines they had to work on. 79-3603 (p) said—And basically the opinions read—I might read one into the record. This is quote/unquote: 'You also inquired if painters are required to charge sales tax on their labor. House painting services are not subject to sales tax since this is considered to be the repair of real estate rather than tangible personal property.' I might read roofing. 'Are re-roofing jobs subject to the sales tax? Such services are not subject to sales tax since the services consisted of repairs to real property rather than tangible personal property.' That's the rationale. . . ."

Later in his testimony Mr. O'Riley confirmed that the roofing or re-shingling of a roof is considered to be nontaxable because it is "repairs to real property." He then testified:

Mr. O'Riley: That's the extent of the answer to the question, repairs to real property and not repairs to tangible personal property.

"Mr. Hardesty: All right, does this have to do because there is no installation involved, or does installation have anything to do with the criteria as far as roofing is concerned?

"Mr. O'Riley: The question isn't posed that way. Re-roofing jobs, painting jobs. If it's a complete new roof it would be the installation of the roof.

"Mr. Hardesty: Would your answer then be if it's a complete new roof that it would be an installation and would or would not be taxable?

"Mr. O'Riley: The way these questions are posed, I wouldn't be able to— With the limited facts in this question, I wouldn't be able to state whether it definitely would be installation of roofing or repairing of roofing. The size of the job isn't given. It's just re-roofing jobs. Now whether it would be—

"Mr. Hardesty: No further questions."

The individual opinions interpreting 79-3603 (*p*), *supra*, are published in bulletins issued by the Department of Revenue. These opinions interpreting the sales tax as applied to labor charges under 79-3603 (*p*), *supra*, are set forth in the record from pages 151 to 237. That confusion exists in the Revenue Department of Kansas is indicated by opinions from the department to which the trial judge made reference in his journal entry and the above testimony of Mr. O'Riley.

A few examples of the interpretations given by the Department of Revenue follow:

"Q. Does the sales tax apply to service charges for the installation of augers, roller mills, electric motors and other machinery for handling grain when this equipment is installed at the time of new construction of a building or structure?

"A. Installation charges for such tangible personal property is not taxable if the tangible personal property is so affixed to the building or structure as to become a part thereof. *The question of whether it is so affixed depends upon the facts in each individual case. Generally, tangible personal property would be considered part of the building or structure if the removal of such property from such building or structure would cause material damage to the building or structure.* If the tangible personal property does not become a part of the building or structure in this manner, then the installation charges are subject to the sales tax." (Emphasis added.)

The foregoing ruling appears to be inconsistent with the decision in *Cook v. Condon*, 6 Kan. App. 574, 51 Pac. 587. There machinery used in mills, much of which was not attached to the floor and could be removed from the mill without injury to the machinery or to the mill building, was nevertheless held to be real estate, at least for mortgage purposes. The court held:

". . . All things used in a mill, which are a part of a complete system and of the machinery necessary to its operation and which have been placed therein by the owner of the realty with intent to make the same permanent, are fixtures and covered by a mortgage upon such mill." (Syl. 3.)

The court in its opinion labeled this machinery "real estate."

Serious problems arise in commercial buildings, factories and "structures" wherein many gray areas exist as to certain equipment, machines and systems which could be considered a permanent part of the structure in one case and not in another.

Guttering presents a typical problem illustrative of some problem areas in maintenance and repair. According to the Department of Revenue installation of guttering in original construction is non-taxable as it is considered a permanent part of the building; repairing of the guttering is non-taxable as it is considered repair

of the building; yet installation of new guttering on an existing building is determined by the department to be installation of personal property and taxable. A normal repair bid for guttering and downspouts would include some repair and some new pieces. To comply with these rulings a contractor would be required to keep time records and tax the labor for new pieces installed. This would be economically impractical, if not impossible.

The department has determined any interior remodeling of a building is taxable as it will always include the installation of tangible personal property. A contractor submitting a bid will hardly gain the confidence of his proposed customer by advising that there is not a tax charged in the roof alterations, as this is repair to the building, yet there is a tax on altering the existing partitions as this is installation of personal property.

The second term that causes particular difficulty in the construction industry is the term "original construction." The appellant argues the term is not vague because it has been judicially construed in *Thorpe Construction Company, Inc. v. Irvin & Company,* 367 F. Supp. 87 (D. Alaska 1973). That case involves the construction of an Alaskan statute dealing with the validity of a mechanic's lien. In analyzing the cases, however, the Louisiana court held the term "original construction" would include a rebuilt or repaired porch. (*Hanover v. Brady,* 148 So. 267 [La. App. 1933].) This definition is clearly at odds with the case relied on by the appellant. There is no well-settled meaning at common law for the term "original construction," and the fact that the term has been construed in a very few cases in foreign jurisdictions does not save it from being vague and indefinite.

Had our court previously defined the words "original construction," it might provide an argument that the term is not vague. Even if a foreign court had defined the term in a similar statute, there might be some merit in the appellant's argument that this term used in the statute is not vague. But where, as here, a foreign court defines those words in construing its own statutes wholly unrelated to 79-3603 (*p*), *supra,* it is irrelevant to our problem, especially where there are contradictory foreign decisions. (See 73 Am. Jur. 2d, Statutes, § 166, p. 370.)

The real problem is not whether the term has been construed by foreign courts, but whether the term in ordinary use has such a clear meaning that men of common intelligence need not guess or differ as to its meaning. A review of the rulings made by the

Department of Revenue itself show the term "original construction" has no such clear meaning.

The department in attempting to answer what constitutes "original construction" of a building or structure under the terms of 79-3603 (*p*), *supra*, has given the following answers. Original construction means the initial or first construction of the building or structure. An addition to an existing building may or may not be deemed original construction depending upon the particular factual situation. For instance, an addition built from the ground up on a new foundation would generally be considered original construction. The addition of an upper floor to an existing structure is considered to be original construction of a structure. Where a manufacturing concern acquired a structurally sound building, which it intended to convert from an office building to a manufacturing facility, and it became necessary to completely raze everything except the bare structure which was basically sound, the extensive remodeling of the building to meet their requirements was not considered to be the original construction of a building or structure.

Under these rulings it would appear that if a house is completely destroyed by a tornado except for the foundation, reconstructing the house on that foundation would not be original construction. However, if one decided to simply add a floor on the top of his house, this would be original construction.

The third confusing term used in the statute is the word "structure." The exact phrase in which the term is used reads, "except services rendered in installing property in connection with the original construction of a building or structure." It seems rather clear from a reasonable reading of the statute, the term "structure" includes something other than a building, for if it only referred to a building, its inclusion would be unnecessary.

The term "structure" does not have a settled meaning at the common law. The appellant's brief indicates several courts have construed the term in both a restricted and a broad sense. The appellant argues the term "structure" should be defined as it was in the case of *New York Central Railroad Co. v. General Motors Corp.,* 182 F. Supp. 273 (N. D. Ohio 1960), where the federal court defined a structure as being something constructed or built as a building, a dam, a bridge, a building of some size, or an edifice. The court was there concerned with construing the term "temporary or permanent structures or obstructions" as used in

an indemnity agreement unrelated to this or any similar statute. The Department of Revenue argues that because it relied upon this particular definition in the *New York Central Railroad Co.* case, the term "structure" is not vague or indefinite.

What the Department of Revenue has done is to arbitrarily pick a definition in one of the many cases defining the term "structure" and apply it to the Kansas taxing statute. Even the department has not uniformly applied the rule of the *New York* case in an opinion where it determined that the service of constructing patios or carports may or may not be subject to the sales tax. It ruled that if any of these services are connected with the original construction of a building, they are not taxable. If the patio or carport is of such a nature that it is built from the ground up, it would be considered the original construction of a structure and not taxable. However, if the carport is ready-made or prefabricated and installed on an existing building, the service of installing the carport is subject to the sales tax.

The building of a water tower or standpipe for storage or pressure was considered to be the original construction of a structure and, therefore, only the material incorporated into the project would be subject to the sales tax at the time it is purchased by the contractor.

What should a contractor do when confronted with bidding on independent loading docks, conveyor systems, transmission systems, free standing signs and the like? Any answer would beg the question but likewise prompt the conclusion that the term "structure" does not, in fact, have a well defined meaning in law or in usage by the department.

A contractor is in a highly competitive business and wishes to charge no more than necessary in order to obtain a fair profit. On the one hand, if the contractor is not able to accurately interpret the sales tax statute, he will become liable for a tax which should have been collected from the consumer. On the other hand, if he collects a tax from the consumer, he may be overcharging the consumer if the tax is not payable. As a result the contractor may lose future business if, in fact, it is later determined that the services were not subject to the tax.

Another problem for the contractor is the difficulty caused in the competitive bidding of contracts. An ambiguous and indefinite sales tax statute may cause contractors to include the tax in their

bid, while their competitors might exclude the tax, thus creating at least a three percent (3%) initial spread in the bids.

*Amicus* says the problem which frequently arises is the situation where the contractors will charge the sales tax and the consumers will dispute that the sales tax is collectable on the particular labor item involved. Many times, especially where the consumer is a large organization supplying the contractor with considerable business, the contractor will be forced to defer to the judgment of the consumer. This is precisely the situation which occurred here where the Owens Corning Company decided on the advice of its legal department, that a particular labor service charge of the appellee was not taxable.

We think it unreasonable for the legislature to appoint the contractor a tax collector in a situation such as this, and in addition require that the contractor have the expertise to determine on a case by case basis whether a sales tax is payable in an area where even attorneys and jurists cannot totally agree. When the contractor turns to the professional tax collector for help to solve these complexities, he unfortunately finds inconsistency in its opinions. The Department of Revenue, therefore, has offered no haven of refuge.

We conclude K. S. A. 1976 Supp. 79-3603 (*p*) uses terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. It, therefore, violates the first essential of due process of law and is unconstitutional.

It now becomes necessary to determine the retroactive effect, if any, to be given our decision which holds K. S. A. 1976 Supp. 79-3603 (*p*) unconstitutional. This section of the Kansas Retailers' Sales Tax Act has been in force since its adoption by the legislature in 1970 (L. 1970, ch. 389, § 2). Many dollars in tax revenues have been collected by the state under this section. After a careful review of *Carroll v. Kittle,* 203 Kan. 841, 475 P. 2d 21; *Henry v. Bauder,* 213 Kan. 751, 518 P. 2d 362; *Vaughn v. Murray,* 214 Kan. 456, 521 P. 2d 262; and the many authorities cited in these cases, we have come to the conclusion that our decision herein should be given limited retroactive effect.

Accordingly, the decision here announced will control the rights of *the parties* to this litigation, the rights of all taxpayers who have paid taxes pursuant to 79-3603 (*p*), *supra*, under protest and have pending actions before the Director of Revenue, the Board of Tax Appeals or in the courts of this state challenging the validity of

the tax on the date our decision herein is announced, but in all other cases it shall be applied prospectively. All other taxes paid and received by the Department of Revenue pursuant to 79-3603 (*p*), *supra*, prior to the date our decision herein is announced shall be retained by the Department of Revenue. All taxes collected pursuant to 79-3603 (*p*), *supra*, but not received by the Department of Revenue prior to the date our decision herein is announced, shall be refunded to the consumer.

The judgment of the lower court is affirmed.

OWSLEY, J., not participating.