No. 49,917

STATE OF KANSAS, *Appellee,* v. STAUFFER COMMUNICATIONS, INC.,
*Appellant.*

(592 P.2d 891)

Opinion filed March 31, 1979.

*Michael W. Merriam,* of Colmery, McClure, Funk, Letourneau & Entz, of Topeka, argued the cause and was on the brief for the appellant.

*Harry E. Warren,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Patricia K. Hirsch,* legal intern, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The primary question presented to this court is whether the State of Kansas may subject persons, including the news media, to criminal sanctions for publishing information concerning issuance of arrest warrants prior to execution and return thereof when such information is taken from public records. See K.S.A. 21-3827. The appellant, Stauffer Communications, Inc., was convicted on two counts of having violated the above cited criminal statute because of articles printed in the Topeka Daily Capital, a daily newspaper published in Topeka, Kansas.

The facts are not in dispute. The sheriff in Douglas County was investigating the murder of Samuel Norwood. In the course of that investigation information came to the investigating officers which involved a stolen car and two occupants of that car. It appeared the occupants had some connection with the murder. Warrants were issued on complaints for the arrest of the two occupants of the car. The county attorney wanted the warrants executed before the two occupants could be alerted and leave the state. Sherry Pigg, a reporter for the Topeka paper, was in Lawrence. She apparently had become aware of the issuance of the warrants and of the names of the two occupants of the car. She interviewed the county attorney and asked him what link there was between the occupants and the Norwood murder. The county attorney requested that Ms. Pigg refrain from making any connection or further comment in her paper. Ms. Pigg requested the names. The county attorney refused to release any names. When Ms. Pigg said she already had the names, she was advised of the criminal statute, K.S.A. 21-3827, which prohibits publication until the warrants are executed and returned. Ms. Pigg then indicated she would print the names in her paper anyway. The county attorney advised her that if the names were printed he would file charges under the statute. The county attorney explained that he did not want the names disclosed because it might hamper efforts to locate and talk to the individuals about the murder.

Ms. Pigg refused to cooperate and called the Topeka office of her newspaper. She talked to Bob Sands, the state editor, about the situation. Sands directed her to go to the office of the clerk of the district court and get the correct names as listed in the court

docket. They would publish the names. The newspaper had apparently obtained the names originally by monitoring the police radio and the editor wanted the court files checked to assure accuracy.

Ms. Pigg was advised a second time, when she checked with a deputy sheriff in Douglas County, that the paper would be prosecuted under the statute if the names were released. The newspaper released the names in two published articles. One of the two occupants of the car was never located. The other was located several weeks later outside the State of Kansas. This action was filed and prosecuted and convictions were obtained.

Ms. Pigg obtained the names of the two persons for whom warrants were issued by going into the office of the clerk of the district court. The criminal appearance docket was on a table in the back of the room. The room was divided by a counter and a swinging gate. It was the general practice for reporters from the news media to go through the gate, proceed to the table where the criminal appearance docket was kept and look through its pages. It is a public document or record which is kept by the clerk of the district court.

K.S.A. 1978 Supp. 45-201(a) states:

"All official public records of the state, counties, municipalities, townships, school districts, commissions, agencies and legislative bodies, which records by law are required to be kept and maintained, except those of the district court concerning proceedings pursuant to the juvenile code which shall be open unless specifically closed by the judge or by law, adoption records, records of the birth of illegitimate children, and records specifically closed by law or by directive authorized by law, shall at all times be open for a personal inspection by any citizen, and those in charge of such records shall not refuse this privilege to any citizen."

Prior to the present case right of access to records in Douglas County was not restricted. Since the present case arose, access to information on issuance of warrants is restricted until such time as the warrants have been returned. It would appear that this present practice of temporarily protecting the confidentiality of documents and records by restricting access may be justified for proper governmental reasons. We will speak to this later in this opinion.

The appellant Stauffer contends its conviction was constitutionally impermissible in that the First Amendment to the United States Constitution and Section 11 of the Bill of Rights of the

Kansas Constitution forbid the imposition of criminal sanctions for truthful reporting of facts gleaned from public documents and records.

The statute under which appellant was charged is K.S.A. 21-3827. The statute reads:

"An unlawful disclosure of a warrant is revealing or making public in any way, not necessary for the execution of such warrant, the fact that a search warrant or warrant for arrest has been applied for or issued or the contents of the affidavit or testimony on which such warrant is based, prior to the execution thereof.

"An unlawful disclosure of a warrant is a Class B misdemeanor."

The First Amendment to the United States Constitution reads in pertinent part:

"Congress shall make no law . . . abridging the freedom of speech, or of the press; . . . ."

The Bill of Rights, Section 11 of the Kansas Constitution, reads in pertinent part:

"The liberty of the press shall be inviolate; and all persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such rights; . . . ."

Appellant places primary reliance on two recent United States Supreme Court cases, *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 43 L.Ed.2d 328, 95 S.Ct. 1029 (1975), and *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 56 L.Ed.2d 1, 98 S.Ct. 1535 (1978).

In *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, the Supreme Court holds that the First and Fourteenth Amendments of the United States Constitution preclude the states from providing a cause of action for invasion of privacy for the publication of the name of a rape victim where the name is included in court records open to public inspection. The court explains its holding as follows:

"By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served. Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media. The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business. . . ." 420 U.S. at 495.

The court continues in broad language which appellant asserts controls the present case:

"In preserving that form of government the First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." 420 U.S. at 495.

A like result is reached in *Oklahoma Publishing Co. v. District Court,* 430 U.S. 308, 51 L.Ed.2d 355, 97 S.Ct. 1045 (1977). In that case the Supreme Court reverses a state trial court's pretrial order enjoining the press from publishing the name or picture of a juvenile charged with delinquency by second degree murder. Although a state statute specifically closed juvenile proceedings, representatives of the press were in fact allowed to attend a detention hearing at which time they obtained the name and picture. Citing *Cox Broadcasting* the Supreme Court holds that a state may not restrain the publication of the name or picture of a juvenile where they have been "publicly revealed in connection with the prosecution of the crime." 430 U.S. at 311. Although the order assailed in *Oklahoma Publishing* was a prior restraint the court's holding is not, by its language, limited to prior restraint cases. Rather, it would appear to stand as a broad affirmation of the principle enumerated in *Cox Broadcasting.*

While *Cox Broadcasting* considers the constitutional validity of sanctions imposed for the accurate publication of information contained in open public records, *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, considers the validity of such sanctions imposed for the accurate publication of information obtained from proceedings closed to the public. A Virginia statute made it a criminal offense for persons, including newspapers, to divulge information regarding proceedings before a state judicial review commission authorized to hear complaints as to judges. The commission acted confidentially. The defendant newspaper published an article accurately reporting on a pending inquiry of the commission. The newspaper was convicted of violating the statute. The Supreme Court reversed, holding the publication was protected by the First and Fourteenth Amendments. The court, while conceding the state may have an interest in maintaining the confidentiality of the commission proceedings, concluded this interest is not sufficient to justify the subsequent punishment of the speech.

The First Amendment to the United States Constitution and

Section 11 of the Bill of Rights of the Kansas Constitution forbid the imposition of criminal sanctions for truthful reporting of facts gleaned from public records. By placing information in the official public records the state has thereby released the information to the public and has placed it in the public domain.

Certain principles became apparent upon examination of these and other Supreme Court cases. As a general rule it may be said if the state wants to keep the press from publishing information related to its governmental functions then it must do so by protecting the confidentiality of the information. See *Cox Broadcasting Corp. v. Cohn,* 420 U.S. at 496; Bezanson, *The New Free Press Guarantee,* 63 Virginia L. Rev. 731 (1977). The state is free to do so absent some limiting statute. The Supreme Court has consistently held that "[n]either the First Amendment nor. the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.,* 438 U.S. at 15. See also *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 609, 55 L.Ed.2d 570, 98 S.Ct. 1306 (1978); *Pell v. Procunier,* 417 U.S. 817, 834, 41 L.Ed.2d 495, 94 S.Ct. 2800 (1974); *Saxbe v. Washington Post Co.,* 417 U.S. 843, 41 L.Ed.2d 514, 94 S.Ct. 2811 (1974). The First Amendment is "neither a Freedom of Information Act nor an Official Secrets Act." Stewart, *Or of the Press,* 26 Hastings L. J. 631, 636 (1975). (Quoted in *Houchins v. KQED, Inc.,* 438 U.S. at 14.)

Appellant next argues that K.S.A. 21-3827 is unconstitutional on its face for reasons of vagueness and of overbreadth. We will first consider the claim of vagueness.

This court has frequently considered the rules relating to constitutional attacks on statutes as vague and indefinite. We have held that the test whether a statute is so vague and indefinite and therefore fails to inform the accused of the nature and cause of the charges against him as required by Section 10 of the Kansas Bill of Rights is the same as that applicable in determining whether a statute violates the due process clause of the Fourteenth Amendment of the United States Constitution. See *State v. Kirby,* 222 Kan. 1, 3-4, 563 P.2d 408 (1977); *State v. Conley,* 216 Kan. 66, Syl. ¶ 1, 531 P.2d 36 (1975).

The test to be applied to a criminal statute when attacked as being vague and indefinite was recently repeated in *City of*

*Altamont v. Finkle,* 224 Kan. 221, 223, 579 P.2d 712 (1978):

" '. . . The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. . . .' (at page 4.)"

See also *State v. Next Door Cinema Corp.,* 225 Kan. 112, Syl. ¶ 3, 587 P.2d 326 (1978); *State v. Kirby,* 222 Kan. at 4; *Kansas City Millwright Co., Inc. v. Kalb,* 221 Kan. 658, Syl. ¶ 1, 562 P.2d 65, modified on other grounds 221 Kan. 752, 564 P.2d 1280 (1977); *State v. Gunzelman,* 210 Kan. 481, Syl. ¶ 2, 502 P.2d 705, 58 A.L.R.3d 522 (1972); *State v. Hill,* 189 Kan. 403, Syl. ¶ 1, 369 P.2d 365, 91 A.L.R.2d 750 (1962). This test is consistent with that established by the United States Supreme Court. See *United States v. Harriss,* 347 U.S. 612, 617, 98 L.Ed. 989, 74 S.Ct. 808 (1954).

The Supreme Court has consistently applied a stricter standard where the statute assailed as vague may impinge on First Amendment interests. "Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen,* 415 U.S. 566, 573, 39 L.Ed.2d 605, 94 S.Ct. 1242 (1974). The reason for this is "First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *N.A.A.C.P. v. Button,* 371 U.S. 415, 433, 9 L.Ed.2d 405, 83 S.Ct. 328 (1963). The constitutionality of a statute will, however, be presumed; all doubts must be resolved in favor of a statute's validity, and before it can be stricken it must clearly appear that the statute violates the constitution. If there is any reasonable way to construe a statute as constitutionally valid, this court must do so. *State v. Kirby,* 222 Kan. at 4.

With these principles in mind we can now consider the constitutionality of K.S.A. 21-3827. Let us again look to the wording of this statute: "An unlawful disclosure of a warrant is revealing or making public in any way, not necessary for the execution of such warrant, the fact that a search warrant or warrant for arrest has

been applied for or issued or the contents of the affidavit or testimony on which such warrant is based, prior to the execution thereof."

An examination of this statute refutes appellant's contention it is impermissibly vague. The statute conveys a clear and definite warning as to the conduct proscribed when measured by common understanding and practice. K.S.A. 21-3827 provided a clear warning to appellant that it was a crime for it to reveal or make public in any way the fact a search warrant or a warrant for arrest had been applied for or issued when it had not been executed.

Appellant also attacks the statute on the grounds of overbreadth. The Kansas Court of Appeals has recently considered the overbreadth doctrine in *State v. Allen & Rosebaugh,* 1 Kan. App. 2d 32, 41, 562 P.2d 445 (1977), wherein the court distinguished the doctrine of overbreadth from that of vagueness:

"While closely related, overbreadth and vagueness are distinct concepts. A statute which is overbroad makes conduct criminal which is constitutionally protected (see *e.g., Zwickler v. Koota,* 389 U.S. 241, 19 L.Ed.2d 444, 88 S.Ct. 391, and cases cited at 389 U.S. 250). One that is vague leaves the ordinary person to guess as to its meaning and as to whether any particular conduct is criminal or not. (See, *e.g., State v. Conley,* 216 Kan. 66, 531 P.2d 36; *Swickler v. Koota,* supra.)"

A statute which is overbroad is one which makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. The fact a statute appears on its face to make constitutionally protected speech criminal does not, however, necessarily require that it be struck down as overbroad.

A statute which is facially overbroad may be authoritatively construed and restricted to cover only conduct which is not constitutionally protected, and as so construed the statute will thereafter be immune from attack on grounds of overbreadth. *State v. Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P.2d 760 (1976); *State v. Allen & Rosebaugh,* 1 Kan. App. 2d 32.

In the present case appellant's sole basis for alleging the statute is overbroad is based on application of the statute so as to forbid truthful reporting of facts gleaned from public records. Appellant's conduct was constitutionally protected as previously pointed out herein and a conviction under the statute is precluded constitutionally when the information concerning issuance of a warrant has been placed in the public domain. It is unnecessary for this court to go further and speculate concerning criminal

sanctions imposed where the confidentiality of that information has been protected by restricting right of access and the information then has been obtained by improper or illegal methods and then disseminated. We will leave that for further decision. Accordingly we hold the criminal sanctions provided in K.S.A. 21-3827 may not be imposed against persons, including the news media, for publishing truthful information properly obtained from public records, and as so construed and restricted the statute is not constitutionally impermissible under the First Amendment to the United States Constitution and Section 11 of the Bill of Rights of the Kansas Constitution.

The judgment and convictions are reversed.

HERD, J., not participating.

MILLER, J., concurring: While I join with the majority and agree that the resolution of this case is legally correct, I regret what must inevitably follow, and what we were informed on oral argument has already happened in Douglas County: the sealing of all records pertaining to the filing of complaints and the issuance of warrants until after an arrest is made. This delay in the disclosure of those documents to reporters will result in delaying the accurate reporting of the news to the public.

The old practice of disclosing all such matters to the courthouse reporter, and relying upon the reporter to treat them as confidential until an arrest was made, was not strictly in compliance with K.S.A. 21-3827; but it gave the reporter the background information so that the news item could be prepared and published promptly following arrest. Courthouse reporters were regarded as special people, and were treated as such.

Reporters must all be treated the same by public officials; public records cannot be opened to one reporter and closed to another. See Gora, The Rights of Reporters—The Basic ACLU Guide to a Reporter's Rights, pp. 73, 75, 229, 230 (1974). Thus this decision, based on the determination of one reporter and one newspaper to publish one perhaps obscure item, will have a direct effect upon all Kansas courthouse reporters, and will in some instances result in a slowing of the news-gathering process. It marks the passing of an era.

HOLMES, J., joins in the foregoing concurring opinion.