### STATE of Delaware

v.

### Carl COLASUONNO, Robert L. Dailey, Sandra Halter, Sharon Miller and Charlotte E. Murphy, Defendants.

Superior Court of Delaware, New Castle County.

Submitted March 16, 1981.

Decided May 19, 1981.

---

Jeffrey S. Goddess, and Jerome M. Capone (argued), City of Wilmington Law Department, for the State of Delaware.

Bernard J. Gartland of Gartland & Dixon, Wilmington; and Saul J. Steinberg (argued), Voorhees, N.J., of counsel, for defendants.

TAYLOR, Judge.

This Opinion involves the combined motions of Carl Colasuonno, Robert Dailey, Sharon Miller, Sandra Halter and Charlotte Murphy [defendants] to dismiss the State's informations[1] charging them with violations of 11 *Del.C.* § 1361.

Defendants Colasuonno, Miller, Halter and Murphy have been charged with violating 11 *Del.C.* § 1361(a)(2) in that they either presented or participated in an obscene performance in which live nude women engaged in masturbation or a simulation thereof. Defendant Dailey is charged with violating 11 *Del.C.* § 1361(a)(1) in that he knowingly provided the embodiment of ob-

scenity by selling admission to an obscene performance of live naked women. The defendants move to dismiss the informations on the following bases: (1) 11 *Del.C.* § 1361(a) is unconstitutionally vague in that it fails to specifically apprise the defendants of what type of conduct is to be considered "obscene;" and (2) even if 11 *Del.C.* § 1361(a) may validly prohibit their conduct, the informations are defective in that they do not set forth the nature of the charges with sufficient clarity to allow the defendants to prepare their defense properly and be protected against later prosecution for the same offense. There is also a question as to whether defendant Dailey may be charged with a violation of 11 *Del.C.* § 1361(a)(1).

I

11 *Del.C.* § 1361 provides in pertinent part:

§ 1361. Obscenity; acts constituting; class D felony or Class A misdemeanor; subsequent violations.

(a) A person is guilty of obscenity when he knowingly:

(1) Sells, delivers or provides any obscene picture, writing, record or other representation or embodiment of the obscene;

(2) Presents or directs an obscene play, dance or performance or participates in that portion thereof which makes it obscene;

(3) Publishes, exhibits or otherwise makes available any obscene material;

(4) Possesses any obscene material for purposes of sale or other commercial dissemination; or

(5) Permits a person under the age of 12 to be on the premises where material harmful to minors, as defined by § 1365 of this title, is either sold or made available for commercial distribution and which material is readily accessible to or easily viewed by such minors. Any material covered by this paragraph shall not be considered read-

---

1. This case comes to this court from the Municipal Court on appeal.

ily accessible to or easily viewed by minors if it has been placed or otherwise located 5 feet or more above the floor of the subject premises or if the material is concealed so that no more than the top 3 inches is visible to the passerby.

11 *Del.C.* § 1364 provides:

§ 1364. Definition of obscene.

Material is obscene if:

(1) The average person applying contemporary community standards would find the material, taken as a whole, appeals to the prurient interests; and

(2) The material depicts or describes:

a. Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; or

b. Patently offensive representations or descriptions of masturbation, excretory functions, and/or lewd exhibitions of the genitals; and

(3) The work taken as a whole lacks serious literary, artistic, political or scientific value.

Section 1361 is an adaptation of Model Penal Code § 251.4(2).

Section 1364 is an adaptation of the basic guidelines set forth by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). These guidelines were enunciated to allow State regulation of "obscene" materials and conduct, while giving fair notice to prospective defendants of the possible illegality of their conduct, without regulating that "speech" and conduct which is protected by the First Amendment of the United States Constitution as applied to the States through the Fourteenth Amendment.

In *Miller*, the Court set forth the limits of regulation as follows:

 The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work taken as a whole, appeals to the prurient interest, ... (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

\* \* \* \* \* \*

413 U.S. at 25, 93 S.Ct. at 2615

The Court noted that it did not seek to propose regulatory schemes. Rather, it sought merely to delineate the area of permissible regulation which did not contravene rights protected by the First Amendment.

We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals. 413 U.S. at 25, 93 S.Ct. at 2615.

Provisions proscribing obscenity in the format found in § 1361 first appeared in the Delaware Criminal Code which was enacted by 58 *Del. Laws* Ch. 497, § 1361, which became effective April 1, 1973. The pertinent definition section is § 1364 which by its heading purported to contain a definition of "obscene," but by its language referred only to obscene material. This definition incorporated the standards which had been enunciated by the United States Supreme Court decision which antedated *Miller*. *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). The initial § 1364 was replaced by a new § 1364 which was enacted January 28, 1974 by 59 *Del.Laws* Ch. 236. The new § 1364 utilized the guidelines of *Miller*. *Raymond Heartless, Inc. v. State*, Del.Supr., 401 A.2d 921 (1979). Again the language of the section referred only to obscene material. Its heading, as in the

case of its predecessor, indicated that it was a definition of "obscene" and the caption of the enacting bill read "An Act To Amend 58 Laws of Delaware, Chapter 497, Relating To The Definition of Obscenity".

Defendants argue that although 11 *Del.C.* § 1364 purports to define the term "obscene" as used in 11 *Del.C.* § 1361(a) and other sections, 11 *Del.C.* § 1364 by its plain language is limited to defining obscene material. There is no other definition section which would define the term "obscene" with reference to conduct. Defendants contend this failure to define "obscene" in a manner which would apply to obscene conduct which is prohibited by 11 *Del.C.* § 1361(a)(2) leaves that statutory prohibition unconstitutionally vague. If that prohibition is unconstitutionally vague, the defendants will not have been given fair notice their conduct was proscribed by the statute as required by *Miller* and in such case they were denied due process.

On the surface the Opinion of the Court in *Miller* lends credence to this argument:

State statutes designed to regulate obscene materials must be carefully limited. See *Interstate Circuit, Inc. v. Dallas,* [390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968)] supra, 390 U.S., at 682–685, 88 S.Ct., at 1302–1305. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. *That conduct must be specifically defined by the applicable State law, as written or authoritatively construed* . . . 413 U.S. at 23–24, 93 S.Ct. at 2614.

■ The State makes the argument that the term "material," as contained in 11 *Del.C.* § 1364, includes not only books, magazines, movies and other such items, but also includes conduct as well. The reasoning behind this contention is that 11 *Del.C.* § 1361 and § 1364 are "in pari materia," and are to be construed together. 2A Sands *Sutherland on Statutory Construction,* § 51.02, p. 290 (4th ed. 1973). It appears to be the State's position that if these statutes are construed together, since Section 1361(a)(2) reaches obscene conduct, the defi-

nition of "obscene" in § 1364 must also be construed to extend to obscene conduct. This argument presupposes that Section 1361 should be the controlling section and Section 1364 should be broadened to encompass all matters covered by Section 1361. Section 1364 contains the more specific language by its use of the word "material". As a general principle of statutory construction, the more specific language is entitled to greater weight than general language. *Mergenthaler v. State,* Del.Supr., 239 A.2d 635 (1968).

Looking to 11 *Del.C.* § 1361(a), parts (3), (4) and (5) contain the term "material". Part (1) refers to specific tangible objects. Part (2) refers to specific types of conduct and makes no reference to tangible objects or material.

■ It is clear that conduct and tangible objects or material are not used interchangeably in the section and that the word "conduct" cannot be substituted for the word "material" in 11 *Del.C.* § 1361(a)(3)–(5). As used in the section the term "material" does not include conduct. Thus § 1361(a) does not provide a basis for construing the definition of obscene material to encompass obscene conduct.

■ However, the failure of the statute to set forth a definition of obscene conduct does not render 11 *Del.C.* § 1361(a)(2) void for being unconstitutionally vague. Although *Miller v. California,* supra, requires that State law specifically define the type of sexual conduct or depiction of sexual conduct which is to be regulated, it does not specifically require this definition to be set forth in a statute. As quoted earlier, the prohibited sexual conduct or its depiction "must be specifically defined by the applicable State law, *as written or authoritatively construed.*" As stated in footnote six, appended to this quotation:

We do not hold as Mr. Justice BRENNAN intimates, that all States other than Oregon must now enact new obscenity statutes. Other existing State statutes, as construed heretofore or hereafter, may well be adequate. [Citations omitted].

413 U.S. at 24, 93 S.Ct. at 2615.

If there remained any vestige of doubt after *Miller* as to whether an obscenity statute need contain a specific definition within the statute, this doubt was laid to rest in *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). In *Hamling,* the defendants challenged 18 U.S.C. § 1461 as void for vagueness. 18 U.S.C. § 1461 made punishable the mailing of material that was "obscene, lewd, lascivious, or filthy ... [and of] other publication[s] of an indecent character." The Supreme Court, relying upon *Miller* and its companion case of *United States v. 12 200-ft Reels of Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), construed the terms of 18 U.S.C. § 1461 to be limited to "patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller v. California,* [413 U.S.] at 25, 93 S.Ct. at 2615, 2616."

Following the lead of *12 200-ft Reels of Film* and *Hamling,* various State Courts have construed their State statutes dealing with obscenity to embody the *Miller* guidelines in order to counter a vagueness challenge to the statute. See *Redlich v. Capri Cinema, Inc.,* 349 N.Y.S.2d 697, 43 A.D.2d 27, (1973); *State v. Burgun,* 49 Ohio App.2d 112, 3 Ohio Op.3d 177, 359 N.E.2d 1018 (1976); *State v. Allen,* 1 Kan.App.2d 32, 562 P.2d 445 (1977); *Hess v. State,* Okl.Cr. 536 P.2d 362 (1975); *State v. Welke,* 298 Minn. 402, 216 N.W.2d 641 (1974); *State ex rel. Chobot v. Circuit Ct. for Milwaukee Cty.,* 61 Wisc.2d 354, 212 N.W.2d 690 (1974); *Pierce v. State,* 292 Ala. 473, 296 So.2d 218 (1974); *State v. A Motion Picture Entitled "The Bet",* 219 Kan. 64, 547 P.2d 760 (1976); *State v. DeSantis,* 65 N.J. 462, 323 A.2d 489 (1974).

Defendants contend that this Court may not construe 11 *Del.C.* § 1361 prohibiting certain types of obscene conduct to embody

the constitutional standards as set forth in *Miller.* Defendants argue that the guidelines of *Miller* apply *only* to statutes dealing with obscene materials. However, the Court in *Miller* recognized the power of the State to prohibit obscene conduct. Footnote 8 of *Miller* stated:

Although we are not presented here with the problem of regulating lewd public conduct itself, the States have *greater* power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior ... 413 U.S. at 26, 93 S.Ct. at 2616.

Given this statement that a more extensive power may be exercised in regulating obscene conduct, it is obvious that the application of the *Miller* guidelines as the standard for determining obscene conduct is a constitutional regulation.

Since there is no statutory definition of obscene conduct, the Court is called upon to construe those words. A fundamental rule of statutory construction is that the Court will endeavor to give a statute a construction which renders the statute constitutionally valid. *Atlantis I Condominium Ass'n v. Bryson,* Del.Supr., 403 A.2d 711 (1979); *Sturgill v. M & M, Inc.,* Del.Supr., 329 A.2d 360 (1974). See also 2A Sands, *Sutherland Statutory Construction* §§ 45.11, 56.04 (4th ed. 1973). *Miller* has supplied constitutionally valid guidelines for determining what is obscene. I find no impediment to the utilization of the *Miller* guidelines in construing the words "obscene conduct" as used in § 1361. Accordingly, those words are accorded that meaning.

There remains the question whether the acts of the defendants which are the basis of the charges against them which occurred prior to this construction of the statute may be prosecuted under 11 *Del.C.* § 1361. Courts have faced this issue with divergent results.[2]

**2.** State Court decisions considering the retroactivity question may be divided into two groups. The first group refused to apply the *Miller* standards to obscenity prosecutions for acts occurring before the Court had construed the obscenity statute as incorporating the *Miller*

standards. See *State v. Allen,* supra; *State v. Welke,* supra; *State v. DeSantis,* supra. Other Courts have allowed retroactive application of the obscenity statute as construed. See *State ex rel. Chobot v. Circuit Ct. for Milwaukee Cty.,* supra; *Hess v. State,* supra. In each case,

The United States Supreme Court considered the question of the retroactive application of the *Miller* guidelines in *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). In *Marks*, defendants were convicted of transporting obscene materials in interstate commerce, and conspiring to transport such materials, in violation of 18 *U.S.C.* § 1465 and § 371, respectively. Defendants' conduct complained of occurred in February, 1973. The Supreme Court issued its decision in *Miller v. California*, supra, on June 21, 1973. The issue in *Marks* was whether the obscenity standards existing before *Miller* or the *Miller* standards applied to the prosecution for pre-*Miller* conduct.[3] The Supreme Court applied the foreseeability test and held that the standards announced in *Miller* were not foreseeable before the Supreme Court released its *Miller* decision and that to apply the *Miller* standards to pre-*Miller* conduct violated the due process clause of the Fifth Amendment.

■ Implicit in the holding of *Marks* is the principle that if a judicial construction of a statute to conform to constitutional standards is foreseeable that construction may be applied retroactively without violating due process guarantees. The test of such foreseeability is whether it was obvious that the statute would receive the particular construction.

■ The question to be answered in this case then, is whether the construction of the portions of 11 *Del.C.* § 1361 dealing with obscene conduct to conform to *Miller* was foreseeable. If so, defendants may be prosecuted under 11 *Del.C.* § 1361 as construed, since they will be considered to have fair notice that their conduct was prohibited. Looking to the facts of this case, I note the following facts: (1) *Miller v. California*, supra, was handed down in 1973; (2) the

Legislature amended 11 *Del.C.* § 1364 in 1974 to incorporate the guidelines set forth in *Miller*. *Raymond Heartless, Inc. v. State*, supra;[4] (3) the Act, 59 Del. Laws Ch. 236, which enacted the amendment of § 1364, was entitled "An Act to Amend 58 Laws of Delaware, Chapter 497, Relating to The Definition of Obscenity," indicating a general definition of obscenity; (4) the amended § 1364, Title 11 Del.C. by its section caption which reads "Definition of Obscene" purported to define the term "obscene" for all purposes; (5) the defendants' conduct complained of took place on January 28, 1980.

Given these facts, I conclude that it was probable and foreseeable that this Court would construe the portions of 11 *Del.C.* § 1361 dealing with obscene conduct to conform with the guidelines of *Miller*. It is obvious that the Legislature, in amending § 1364, sought to bring 11 *Del.C.* § 1361 et seq. into full conformity with *Miller*; that they were less than totally successful may be attributed to inadequate draftsmanship. Given the Court's duty to construe statutes so as to render them constitutionally valid, and since there was no apparent reason for the Legislature to establish a different standard for obscene material than for obscene conduct, it was clearly foreseeable that the Courts of Delaware would fill the gap by applying the same obscenity tests as found in 11 *Del.C.* § 1364 to all of the prohibitions of § 1361. Thus, defendants had fair notice that their conduct was prohibited, and could be prosecuted pursuant to 11 *Del.C.* § 1361(a)(2) as I have construed it today.

## II

■ Mr. Dailey is charged with a violation of § 1361(a)(1) in that he did "knowing-

---

the central question was whether judicial construction of the obscenity statute to conform to the *Miller* guidelines was foreseeable.

**3.** Certain conduct which would not have violated the pre-*Miller* obscenity standard as announced in *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966) and *Roth*

*v. United States*, supra, would be a violation of the *Miller* obscenity standard.

**4.** The previous 11 *Del.C.* § 1364 essentially had incorporated the definition of obscenity enunciated by the U. S. Supreme Court in *Roth v. United States*, supra, and *Memoirs v. Massachusetts*, supra.

ly provide the embodiment of obscenity by selling admission to an obscene performance of live naked women, escorting patrons to a booth where said performance took place, and assisting patrons in obtaining the performance with instructions as to where money was to be placed ..." The issue here is whether the alleged conduct could be a violation of 11 *Del.C.* § 1361(a)(1).

As stated previously, 11 *Del.C.* § 1361(a)(1) states that a person is guilty of obscenity when he knowingly or recklessly:

> (1) Sells, delivers or provides any obscene picture, writing, record or other representation or embodiment of the obscene ...

The words, picture, writing and record obviously fall in the category of material and do not involve a performance. The remaining words of subsection (1) are "other representation or embodiment of the obscene". The word "other" connotes a similarity or common quality between "representation or embodiment" and "picture, writing, [and] record". Since the word "obscene" is used separately in connection with each quoted phrase the similarity or common quality contemplated by the word "other" must refer to some other similarity or common quality. The similarity or common quality of the quoted phrases is satisfied if the phrase "representation or embodiment" is limited to items which are material. That this subsection was intended to refer to material is evidenced by the comments on the new Delaware Criminal Code published by the Governor's Committee for Revision of the Criminal Law in discussing § 1361 which states:

> Subsection (1) prohibits any knowing or reckless transfer of obscene material. A bookseller would be guilty of an offense under this subsection if he knowingly sells an obscene book, or one which he has reason to think may be obscene but fails to check. If he has no notice of obscenity (e.g., where the cover and advertising indicate the book is serious literature and there is no mention of obscenity), he would not be guilty, even though he in fact sold an obscene book. "Provides" is

meant to take into account loans or other short-term transfers of obscenity. It is believed that subsection (1) is broad enough to cover any sort of material which could conceivably be obscene.

I conclude that 11 *Del.C.* § 1361(a)(1) does not prohibit an obscene performance of live naked women and hence the charge that defendant Dailey sold admission and assisted patrons in connection with the performance does not validly charge a violation of 11 *Del.C.* § 1361(a)(1). The information against defendant Dailey is dismissed. Of course, this Opinion does not reach the question of whether Robert Dailey may be charged under any other section of the Criminal Code.

### III

I now turn to the contentions of the remaining defendants that the informations charging them with violations of 11 *Del.C.* § 1361(a)(2) are defective as a matter of law. Defendants contend that the informations do not set forth the nature of the charges with sufficient clarity to allow defendants to prepare their defense properly and be protected against later prosecutions for the same offense.

▮ The information is required to be a plain, concise and definite written statement of the essential facts constituting the offense charged. *Superior Court Criminal Rule 7(c).* The essential facts are those that will clearly inform the defendant of the precise offense charged so that he may prepare his defense and will be protected against later prosecution for the same offense. *State v. Green,* Del.Super., 376 A.2d 424 (1977). The information need not parrot the statute; so long as a sufficient factual basis for the charge is set forth, the information is valid. *Pepe v. State,* Del. Supr., 171 A.2d 216 (1961), appeal dismissed per curiam, 368 U.S. 31, 82 S.Ct. 145, 7 L.Ed.2d 90 (1961).

▮ Looking to the informations, Sandra Halter, Sharon Miller and Charlotte Murphy are charged with "knowingly participat[ing] in an obscene performance in

that while performing nude [they] did engage in masturbation or a simulation thereof, made lewd remarks, and exhibited [their] genitals in a lewd fashion." As noted earlier, *Miller* set out examples of definitions of patently offensive descriptions of sexual conduct which would be specific enough to safeguard the First Amendment rights of a defendant and provide him with fair notice that his activity was prohibited. One of these examples would allow regulation of "[p]atently offensive representation or descriptions of masturbation ... and lewd exhibition on the genitals." See *Miller v. California*, supra, 413 at 25–28, 93 S.Ct. at 2615–2617.

Analyzing the informations against Ms. Halter, Ms. Miller and Ms. Murphy, they charge that: (1) defendants are charged with knowingly participating in an obscene performance, (2) the performance was obscene because while performing nude, they engaged in masturbation or a simulation thereof, made lewd remarks, and exhibited their genitals in a lewd fashion; (3) their knowing participation in this performance violated 11 *Del.C.* § 1361(a)(2); (4) the performance complained of took place on January 28, 1980 at 202 West Eighth Street in Wilmington. Considering the specific language of the informations, and given the language of 11 *Del.C.* § 1361(a)(2) as this Court has construed it to comply with *Miller*, I conclude the informations charging defendants Halter, Miller and Murphy with violation of 11 *Del.C.* § 1361(a)(2) are legally sufficient. The informations clearly pinpoint the specific actions which are alleged to violate 11 *Del.C.* § 1361(a)(2), and so are sufficiently clear to allow defendants to prepare their defense properly and to protect them from later prosecutions for the same offense.

Defendant Carl Colasuonno, Jr. is charged with "knowingly present[ing] an obscene performance in which live nude women did engage in masturbation or a simulation thereof, made lewd remarks and exhibit[ed] their genitals in a lewd fashion ..." The information charging defendant Colasuonno with violation of 11 *Del.C.* § 1361(a)(2) diverges from the language of informations brought against defendants Halter, Miller and Murphy only in that it charges him with *presenting* an obscene performance. I conclude, therefore, that the analysis applicable to the informations brought against defendants Halter, Miller and Murphy is similarly applicable to the information brought against defendant Colasuonno. Thus, I hold the information charging defendant Colasuonno with violation of 11 *Del.C.* § 1361(a)(2) to be sufficiently clear to allow him to prepare his defense properly and to protect him from later prosecutions for the same offense.

For the reasons stated above, the motions to dismiss presented by defendants Halter, Miller, Murphy and Colasuonno are denied. Defendant Robert Dailey's motion to dismiss is granted. IT IS SO ORDERED.