Jack P. STOLTZ, Respondent Below Appellant,

v.

The DELAWARE REAL ESTATE COMMISSION, Petitioner Below Appellee.

Superior Court of Delaware, New Castle County.

Submitted Jan. 5, 1984.

Decided Feb. 24, 1984.

Walter L. Pepperman, II (argued), Donald E. Reid of Morris, Nichols, Arsht & Tunnell, Wilmington, for respondent below appellant.

James J. Hanley, Deputy Atty. Gen., Dept. of Justice, Wilmington, for petitioner below appellee.

TAYLOR, Judge.

The Delaware Real Estate Commission [Commission] held that Jack P. Stoltz, [appellant], who is the holder of a Delaware real estate broker's license, violated 24 *Del.C.* § 2912(a)(8) by violating Commission Regulation XIV in two real estate transactions. This is an appeal from that decision and order. Briefs have been filed and argument has been heard.

The proceeding commenced with a letter from Anthony G. Bariglio [Bariglio] dated December 15, 1980 which asserted that Stoltz had refused to pay Bariglio certain past and future commissions which became due him by virtue of his former association with Stoltz Realty Company [Stoltz Realty] [1] and charged appellant with unprofessional conduct and suggested that the Commission look into the matter. Appellant responded by denying that the Commission had jurisdiction over the dispute between Bariglio and appellant and pointed out that Bariglio and Stoltz Realty were in litigation concerning Bariglio's claim for commissions. The Commission informed appellant that it would hold a hearing on Bariglio's complaint. Appellant moved to dismiss the complaint. Bariglio then filed an affidavit which alleged that Stoltz Realty had on three occasions made payments out of commissions to non-licensed persons in violation of Commission Regulation XIV. By stipulation of the parties the proceedings before the Commission were confined to the matters stated in the Bariglio affidavit, and appellant withdrew his motion to dismiss. After opposing affidavits were filed,

---

1. Stoltz and Stoltz Realty have been treated without distinction by the Commission and by the parties to this appeal and will be treated similarly on this Opinion.

Bariglio undertook to withdraw his complaint. The Commission then held a hearing on the matters described in Bariglio's affidavit and decided that two of the three matters alleged by Bariglio violated Regulation XIV.

I

■ The first issue is whether the Commission was authorized to conduct the proceeding which culminated in the finding that appellant had violated Regulation XIV. Appellant contends that the Commission could not conduct this proceeding unless the information before the Commission made out a prima facie case against a license holder. This contention rests on the wording of 24 *Del.C.* § 2912(a) which reads:

> (a) The Commission may, upon its own motion, and shall upon the verified complaint in writing of any person, provided such complaint, together with evidence documentary or otherwise presented in connection therewith, shall make out a prima facie case, investigate the actions of any real estate broker or real estate salesman or any person who shall assume to act in either of such capacities within the State ...

Appellant argues that the above language imposes a restriction upon the Commission that its investigation must be based on complaint and evidence "connected therewith" which makes out a prima facie case. This contention overlooks the actual language of the subsection. The subsection deals with two distinct situations. One situation is where the Commission acts upon its own motion; the other situation is where the Commission acts on a complaint. With respect to action upon the Commission's own motion, the pertinent language is, "The Commission may, upon its own motion, ..., investigate". With respect to action upon complaint, the pertinent language is, "The Commission ... shall upon the verified complaint in writing of any person, provided such complaint, together with evidence documentary or otherwise

presented in connection therewith, shall make out a prima facie case, investigate". The use of the words "may, upon its own motion" and the words "and shall upon the verified complaint" signify alternatives. Therefore, each alternative contemplates requirements distinct from the other. The mandate requiring the Commission to act upon a complaint requires Commission action only where a prima facie case has been made out by the complainant. Alternatively, the Commission is given broad discretion on its own motion to investigate the actions of its licensees. I find that the "prima facie case" requirement is only a prerequisite to mandatory Commission action upon a complaint and does not restrict the discretionary power of the Commission to initiate and conduct disciplinary proceedings.

■ In this instance, the Commission ultimately elected on its own initiative to investigate and hold a hearing on these matters even though the complainant had sought to withdraw the charges. This action was consistent with and authorized by 24 *Del.C.* § 2912(a) and 24 *Del.C.* § 2905(3) and did not require a prerequisite showing of a prima facie case.

II

■ Appellant contends that its motion for summary judgment should have been granted by the Commission and that a hearing should not have been held. Appellant has cited no authority for making summary judgment a part of the procedure before an administrative body and such a requirement is unsupported and unjustified under the statute. The statutory right of a person involved in such a proceeding is to a fair hearing after proper notice. 24 *Del.C.* § 2913.

III

Appellant contends that Chapter 29 of Title 24, Delaware Code, does not apply to persons who participate in a single isolated real estate transaction and that there is no evidence that Lawson or Levy, the recipi-

ents of payments, had participated in any other real estate transactions. Appellant relies on *Bellanca Corp. v. Bellanca*, Del. Supr., 169 A.2d 620 (1961); *Coyle v. Peoples*, Del.Super., 349 A.2d 870 (1975), *aff'd* 372 A.2d 539 (1977). Each of those cases was a suit by a person who claimed compensation for having brought about a sale or lease of Delaware real estate. Neither plaintiff had a Delaware real estate broker's license and each sought compensation from the seller or lessor of the property. In *Bellanca*, the Supreme Court noted that the statute requiring a license for a Delaware real estate broker applied only to a person whose actions for another in the sale or rent of property were rendered in the course of the person's "whole or partial [broker's] vocation," and held that a person who performs an isolated single transaction of brokerage not being required by Delaware law to have a license is not barred from recovering compensation for his services. *Coyle* involved a broker licensed in Pennsylvania but unlicensed in Delaware who acted in conjunction with a Delaware licensed real estate broker in the leasing of Delaware property. The Pennsylvania broker obtained a lessee for a property listed by the Delaware licensed broker. The owner of the property entered into an agreement with the Delaware broker and the Pennsylvania broker under which the owner agreed to pay a designated commission on the net annual related income and a commission of six percent of the gross sales price if the lessee exercised an option to purchase to be divided between the brokers. The total commission was the percentage of the sales price which customarily was charged by a Delaware broker. After the option was exercised, the Pennsylvania broker sued the owner for one-half of the sale commission. Citing *Trainer v. Deemer*, Del.Super., 166 A. 657 (1933), Judge (now Justice) Christie held that where this was the only Delaware transaction by the Pennsylvania broker and it was done in conjunction with a Delaware licensed broker, the Pennsylvania broker was entitled to pursue his claim for his portion of the commission.

Appellant argues that since a broker not licensed in Delaware who has engaged in only one Delaware transaction can sue the client for a portion of the commission, that broker could also sue the Delaware licensed broker who has received the total commission for a portion of the commission. Appellee argues that although the unlicensed person who engages in a single brokerage transaction is not a broker or salesman within the statutory definition, the language of Regulation XIV is not so limited since that Regulation deals with an agreement between a licensee and a non-licensee.

■ Resolution of this issue calls for an analysis of the statute. First, the power of the Delaware Real Estate Commission is limited to "regulations not inconsistent with the law". 24 *Del.C.* § 2905. Based on the fact that the licensing requirement for a real estate broker or salesman is a regulation of that profession and not merely a revenue measure, it has been held that a person who engages in that activity without the required license may not receive a commission for obtaining a purchase for real estate. *Reeder v. Jones*, Del.Super., 65 A. 571 (1902); *E.A. Strout Co. v. Howell*, Del.Supr., 85 A. 666 (1913). The license requirement does not apply to an isolated single transaction by a person not wholly or partially in the vocation of real estate broker or agent. *Bellanca Corp. v. Bellanca*, supra; *Trainer v. Deemer*, supra. The statutory policy as determined by the above holdings permits an unlicensed person to be compensated for acting as a broker or agent in a sale where the sale is a single isolated transaction and the person is not acting wholly or partially in the vocation of real estate broker or agent and bars such compensation to any other person who acts as a broker while unlicensed. Moreover, 24 *Del.C.* § 2912(a)(7) contains specific language proscribing payments by brokers, describing the proscribed action as "[p]aying a commission or valuable consid-

eration to any person for acts or services performed in violation of this chapter". Services coming within the conditions described in the above cases can be performed without a license and hence are not performed in violation of 24 *Del.C.* Ch. 29 and compensation is not proscribed.

 Regulation XIV must be consistent with the statutory policy. 24 *Del.C.* § 2905. Cf. *Wilmington Country Club v. Delaware Liquor Commission*, Del.Supr., 91 A.2d 250 (1952). Insofar as the Regulation prevents a licensed broker from sharing commissions with a person who is required to be licensed under the statute or with a principal in the transaction, the Regulation is not inconsistent with the statute. However, to the extent the Regulation would prevent an unlicensed person not acting wholly or partially in the vocation of real estate broker from being compensated for a single isolated transaction, it is inconsistent with the statute in that it would prohibit conduct which the statute permits and would exceed the statutory power of the Commission. Where a public act might be construed to exceed constitutional or statutory limits, the Court will avoid that result. *Atlantis I Condominium Ass'n v. Bryson*, Del.Supr., 403 A.2d 711 (1979); *Opinion of the Justices*, Del.Supr., 295 A.2d 718 (1972); *State v. Colasuonno*, Del. Super., 432 A.2d 334 (1981); 2A *Sutherland Statutory Construction* (4th Ed.) § 45.11, pp. 33–4. Therefore, Regulation XIV must be construed to exclude the single isolated transaction by an unlicensed person not wholly or partially in the vocation of real estate broker or agent.

 The Commission did not understand the Regulation to be so limited and did not determine whether each of the transactions here would fall within that exclusion. In view of the absence of appropriate findings supported by substantial competent evidence, the matter must be remanded to the Commission for further action consistent herewith.

## IV

The next issue is whether, if the transactions do not fall within the exclusion discussed above, the record shows that appellant violated Regulation XIV which forbids a licensee to "use commissions or income received from commission as rebates or favorable consideration paid to or given to non-licensed persons, partnership or corporation as inducement to do business or secure business". The Commission found in each instance that a payment was made to a non-licensed person from commissions. This finding is not challenged by appellant. In each instance the point in controversy is whether the payment was made as an inducement to secure business.

In the Farmers Market transaction, the Commission rested its conclusion that the payment was made as such inducement upon the following findings: (1) that the person to whom the payment was made (Mr. Lawson) informed appellant that Lawson's fee would have to be paid by appellant, (2) that there were several deals being considered and no commitment had been made, (3) that appellant agreed to make the payment prior to the sale being consummated, (4) that the agreement was made as an inducement for the deal to go forward, (5) that no transaction would have been consummated without payment to Lawson as an inducement to Lawson to recommend the deal to the buyer.

In the B'Nai B'Rith transaction, the Commission rested its conclusion that the payment was made as such inducement upon the following findings: (1) that the buyer, B'Nai B'Rith, was considering three other sites to purchase, (2) that the person whom appellant paid (Mr. Levy) was a member of the Board of B'Nai B'Rith and discussed the potential sites with other Board members (but he abstained from voting on the site selection), (3) that these facts led to the inference that the payment to Levy was made as an inducement to assist in securing the closing of the transaction.

 The language of Regulation XIV which bars the use of commissions as an

inducement to do business or secure business is one approach to the subject of fee splitting which is a common restriction on professional activity. In applying Regulation XIV the Commission is called upon to determine whether the payment was made as "inducement to do or secure business". In the context of inducement to breach a contract, the word "inducement" means to cause a party to choose one course of conduct rather than another. *Matter of Kearney Chemical Co.,* D.Del., 468 F.Supp. 1107, 1111 (1979); *Restatement (Second) of Torts* § 766. Where professional or business restriction bars giving inducements, that restriction has been construed to refer to a benefit not ordinarily provided according to the practices in that field of endeavor. *Morthland v. Lincoln Material Life Ins. Co.,* 220 Ind. 692, 42 N.E.2d 41 (1942).

■ It must be recognized that in some professions or endeavors auxiliary services may be a legitimate element in the conduct of the profession and that the line between what is a legitimate expenditure in the profession and what constitutes an inducement to do business is not always clear. Accordingly, various factors must be taken into consideration in an analysis determining whether the standard of the profession has been violated. Some of the factors which should be considered in depth in determining whether a violation of Regulation XIV has occurred are: whether the challenged payment involves the rendering of services which are not within the capability of the broker's organization; whether the payment was for services that a broker would ordinarily pay for without reimbursement; whether the payment was for services which are reasonably required in connection with this sale or in connection with a sale of this type of property; whether the payment was for services involving persuasive efforts on the part of the person rendering the services other than those directly related to a report or information developed by that person; whether the compensation actually paid bears a reasonable relationship to the services which met the above standards; whether the services would have been paid for by the broker regardless of the outcome of the proposed transaction.

■ In the instances under consideration here the evidence indicates that some services were rendered by the person to whom the payment was made. The decision of the Board addressed none of the factors which I have enumerated in the preceding paragraph or similar factors nor did it even give recognition to the fact that services not involving sales persuasion had been rendered. There was no direct testimony that the payment was made as inducement to do or secure business. The Commission drew the inference of inducement from a few circumstantial pieces of evidence. And it stated no basis for disregarding other evidence which would lead to the contrary inference, nor did it discuss the relationship of any pertinent practices in the profession to these transactions. Cf. *Equitable Life Assurance Society v. Robinson,* Ohio Co.Pl., 147 N.E.2d 648 (1957). The intermediate analysis which would lead to the Commission's conclusion in a matter as complex as this must be indicated in order for an appellate court to determine whether the Commission has acted properly within the law. Cf. *Board of Pub. Educ. v. Rimlinger,* Del.Supr., 232 A.2d 98 (1967). In view of the inadequacy of the Commission's findings, the matter must be remanded to the Commission for further action consistent herewith.

## V

Appellant also contends that it was improper for the Commission to consider this matter because the members of the Commission are active in the local real estate arena in competition with appellant on a daily basis in which appellant is "the largest commercial realtor in his local market area," and that any action disabling appellant from continuing in business would benefit the real estate brokers in that area, including members of the Commission.

Appellant has cited a number of authorities in support of his contention that the determination by members of the Commission who are business competitors of appellant violates the constitutional guarantee of due process of law. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) recognized that there is a due process requirement that administrative proceedings be before an unbiased decision maker who does not have a pecuniary interest in the outcome of the matter. However, *Withrow* did not find that a proceeding against a physician conducted by a board of fellow physicians violated that standard. *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) involved an action by the Alabama Board of Optometry to revoke the license of an optometrist who was employed by a business corporation. All of the members of the Board were independent practitioners not employed by others. Shortly after the filing of the charges against the optometrist, the Board filed suit against the corporation which had employed the optometrist against whom the charges were filed seeking to enjoin the corporation from unlawful practice of optometry. The Supreme Court affirmed a District Court holding that the pecuniary interest of the members of the Board when viewed against the background of that case disqualified the Board from making an administrative adjudication on the question of whether the optometrist's license should be revoked. *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) and *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) dealt with a subject unrelated to the present contention, and held that considerations of due process of law invalidated a conviction rendered by a Mayor of a town whose office is concerned with the town finances where the fine would inure to the financial benefit of the town. *Paitakis v. City Council of the City of New Brunswick,* 126 N.J.Super. 233, 313 A.2d 804 (1974) involved possible invalidation of an action by City Council which benefited a business establishment in which a councilman was a close associate of the principal stockholder of the establishment and had been provided telephone answering service by the establishment. *New Jersey State Board of Optometrists v. Nemitz,* 21 N.J. Super. 18, 90 A.2d 740 (1952) held that the standard of due process had not been met where an administrative board relied on facts known to members of the Board but which were not made a part of the record and the party involved had not had an opportunity to test the trustworthiness of the facts and explain or rebut them. The Court in *Nemitz* also held that a member of the Board who had caused the investigation to be initiated, procured the investigator and provided funds developing evidence that the person affected had not acted ethically was disqualified from serving on the Board in that proceeding. *Davis v. Wood,* R.I.Supr., 427 A.2d 332 (1981) recognized the principle that an officer conducting a hearing may not act in a prosecutorial capacity, but held that where the hearing officer raised questions merely for clarification of testimony he did not evidence a partisanship which violated due process. *Dayoub v. Com., State Dental Council, etc.,* 70 Pa.Comm. 621, 453 A.2d 751 (1982), applied the same principle recognized in *Davis,* supra, and found that in that instance Board members had heatedly questioned a party and argued with him in such a manner as to breach the duty as a neutral, detached and impartial decision maker.

The lesson from the above cases is that the members of the Board must not have bias, whether growing out of demonstrated hostility, opportunity for personal gain, prejudgment of the matter, prior partisan participation in the matter or any other prejudicial motivation. Appellant makes various factual assertions in support of his contention of Commission bias. These are not properly a part of the record and are not in such form that they can be evaluated at this stage.

The concept of professional self-regulation is generally recognized. Therefore, disqualification based on personal ad-

vantage must stand on more than general competitive status in the same profession. Because of the absence of established facts, the Court cannot give further consideration to this issue here.

■ Since the matter must be remanded to the Commission with respect to the issues discussed above, there will be an opportunity for appellant to make a factual record on this issue if he wishes to do so.

It is unnecessary to review appellant's contentions concerning the conduct of the hearing which failed to adhere strictly to statutory requirements. Upon remand the parties will have an opportunity for proceedings which satisfy with statutory procedural requirements.

The decision of the Commission will be reversed and the matter remanded to the Commission for further proceedings consistent herewith. Appellant shall submit an appropriate order on notice or consent.