In re Matthew W. THOMAS, Pamela J. Thomas, also known as Pamela J. Carroll, Debtors.

Wachovia Bank, N.A., formerly known as First Union National Bank, Trustee for Long Beach Mortgage Loan Trust 2001–4, Plaintiff—Defendant— Appellee,

v.

J. Michael Morris, Trustee, Defendant—Plaintiff— Appellant.

BAP No. 06–068.
Bankruptcy No. 03–11882–7.
Adversary Nos. 04–5228, 04–5232.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Feb. 12, 2007.

J. Michael Morris, pro se.

Michael D. Doering, Kansas City, Missouri, for Plaintiff—Defendant—Appellee.

Before CLARK, CORNISH, and TALLMAN [1], Bankruptcy Judges.

TALLMAN, Bankruptcy Judge.

This matter involves a dispute between the Debtors' Chapter 7 trustee ("Trustee") and Wachovia Bank, N.A. ("Wachovia"), with respect to rights in the Debtors' manufactured home.[2] Wachovia is the fore-

1. Honorable Howard R. Tallman, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

2. We note that the Debtor Michael Thomas was omitted from the caption for this appeal. The Clerk is directed to update the records in this appeal accordingly.

closing creditor who purchased Debtors' real property in a foreclosure sale. The Trustee appeals from the bankruptcy court's judgment denying his Complaint to Avoid and Preserve Unperfected Security Interest and granting Wachovia's Petition to Quiet Title. The bankruptcy court based its judgment on the doctrine of claim preclusion. Because claim preclusion does not bar the Trustee from asserting his rights to the Debtors' manufactured home, we reverse.

## I. BACKGROUND

On November 29, 2001, the Debtors executed a note and real estate mortgage in favor of Long Beach Mortgage Company ("Long Beach"), Wachovia's predecessor in interest. The Debtors' real property consisted of a parcel located in Arkansas City, Kansas (the "Real Estate"), with their 1997 Schultz manufactured home (the "Manufactured Home") situated on it. In an affidavit attached to the mortgage, the Debtors stated: 1) there is a Manufactured Home on the Real Estate which is permanently affixed to it; 2) the wheels have been removed and the Manufactured Home is permanently attached to utilities; 3) the Manufactured Home is titled to the same persons who hold title to the Real Estate; and 4) it is the Debtors' intent that the Manufactured Home be considered as part of the Real Estate.[3] It is undisputed that neither party took steps to

have Long Beach's security interest noted on the Debtors' certificate of title for the Manufactured Home.[4] Long Beach's note and mortgage were subsequently assigned to Wachovia.

The Debtors filed their bankruptcy case on April 16, 2003. Wachovia sought relief from the automatic stay and, on July 18, 2003, the bankruptcy court entered an order granting relief to Wachovia with respect to the Real Estate.[5] Wachovia did not request, and the bankruptcy court did not grant, stay relief with respect to any personal property. The bankruptcy court's stay relief order provides that a judicial foreclosure may proceed in state court naming the Trustee as an *in rem* party only. It also provides that the estate will be entitled to full redemption rights and that the Trustee must receive notice of any sheriff's sale conducted with respect to the Real Estate.[6] On January 22, 2004, the Real Estate was sold at a sheriff's sale. The Certificate of Purchase shows that Wachovia purchased the Real Estate for $118,839.31.[7]

The Trustee was named as an interested party in the Kansas judicial foreclosure proceedings but he took no action in the case. Neither the Trustee nor Wachovia's counsel were aware of the fact that a manufactured home was located on the Real Estate. However, before Wachovia

---

3. Manufactured/Mobile Home Affidavit ("Affidavit"), Ex. C to Petition to Quiet Title, Attach. to Notice of Removal, in Appellant's App. at 119.

4. In 2001, when the Debtors executed the mortgage now held by Wachovia, Kansas Statute § 58–4204(g) (2001) required the grantor of a security interest in a manufactured home to surrender the certificate of title to the creditor and for the creditor to make application to the Division of Vehicles for a new certificate of reflecting the security interest.

5. Order Granting Motion of Wachovia Bank, N.A. (Formerly Known as First Union National Bank), as Trustee [For] Long Beach Mortgage Loan Trust 2001–4 Relief from Automatic Stay, in Appellant's App. at 65.

6. *Id.* at 2, in Appellant's App. at 66.

7. Certificate of Purchase, Ex. H to Petition to Quiet Title, Attach. to Notice Removal, *in* Appellant's App. at 140.

could insure its title to the Real Estate, the title insurance company required it to undertake a quiet title action to make sure that its title to the Real Estate included the Manufactured Home.

On August 6, 2004, Wachovia commenced its quiet title action in the District Court of Cowley County, Kansas (the "State Court"). At that time, the Trustee learned that the Real Estate contained the Manufactured Home. On August 30, 2004, the Trustee filed his Notice of Removal to remove the quiet title action from the State Court to the bankruptcy court. At the same time, the Trustee filed a separate adversary action in the bankruptcy court alleging that Wachovia did not have a perfected lien on the Manufactured Home and seeking to avoid Wachovia's lien under 11 U.S.C. § 544(a) for the benefit of the bankruptcy estate. The quiet title action and the lien avoidance action were consolidated and submitted to the bankruptcy court on stipulated facts.[8] The bankruptcy judge concluded that, because the Trustee was a party to the prior State Court foreclosure action, claim preclusion barred him from asserting any rights to the Manufactured Home.[9]

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts

within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[10] Neither party elected to have this appeal heard by the United States District Court for the District of Kansas, thus consenting to review by this Court.

## III. STANDARD OF REVIEW

■■■ "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')."[11] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[12]

■■■ This appeal presents issues requiring interpretation of Kansas law and a determination of the applicability of the doctrine of claim preclusion. These are exclusively legal issues that we will review *de novo*.[13]

## IV. DISCUSSION

### A. Statutory Background

Prior to 1991, the titling of manufactured homes and the perfection of security interests in manufactured homes was controlled by Kansas's motor vehicle titling statutes.[14] In the 1987 case of *Beneficial*

---

8. Stipulations of Fact, *in* Appellant's App. at 153.

9. Opinion Determining that Trustee Cannot Avoid Creditor's Lien on Manufactured Home at 2–3, *in* Appellant's App. at 176–77.

10. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

11. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see* Fed. R. Bankr.P. 8013; *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996).

12. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

13. *See MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1622, 164 L.Ed.2d 334 (2006); *Wilkes v. Wyo. Dept. of Employment Div. of Labor Standards*, 314 F.3d 501, 503 (10th Cir.2002).

14. *See Beneficial Fin. Co. of Kan., Inc. v. Schroeder*, 12 Kan.App.2d 150, 737 P.2d 52 (1987).

*Finance Co. of Kansas, Inc. v. Schroeder,* the Kansas Court of Appeals held that notation of a security interest on a manufactured home certificate of title was the exclusive method of perfecting a security interest in a manufactured home notwithstanding the fact that the manufactured home had been permanently affixed to the real estate upon which it stood.[15]

In 1991, the Kansas Manufactured Housing Act[16] (the "KMHA") was enacted into law. The KMHA is comprehensive legislation covering the licensing and regulation of manufacturers, distributors, dealers, and installers of manufactured housing; regulating sales transactions involving manufactured housing; setting uniform installation standards; and regulating the titling of manufactured homes as well as perfection of security interests.

Under the KMHA, manufactured homes are no longer treated as motor vehicles.[17] Nonetheless, the procedure for recording an ownership interest and for perfecting a security interest is similar to the procedure used for motor vehicles. Kansas Statute § 58–4204 provides that a certificate of title is to be issued for a manufactured home and that any security interests applicable to a given manufactured home must be noted on that certificate of title. In addition, that section sets out procedures to be followed when ownership of a manufactured home is transferred under various circumstances, including through judicial sale.[18]

---

15. *Id.* at 55.

16. Kan. Stat. Ann. §§ 58–4201 to 58–4212.

17. Kan. Stat. Ann. § 8–2401 (2005).

18. A few of the provisions of the version of § 58–4204 that was in effect in November of 2001, when the Debtors executed the mortgage in favor of Wachovia's predecessor, were the following:

(a) Upon the transfer or sale of any manufactured home or mobile home by any person or dealer, the new owner thereof, within 30 days, inclusive of weekends and holidays, from the date of such transfer or sale, shall make application to the [D]ivision [of Vehicles] for the issuance of a certificate of title evidencing the new owner's ownership of such manufactured home or mobile home. An application for certificate of title shall be made by the owner of the manufactured home or mobile home, or the owner's agent, upon a form furnished by the division, and it shall state all liens or encumbrances thereon . . . .

. . . .

(d) The fee for each original certificate of title shall be $3.50. The certificate of title shall be good for the life of the manufactured home or mobile home while owned or held by the original holder of the certificate of title.

(e) Upon sale and delivery to the purchaser of every manufactured home or mobile home

subject to a purchase money security interest . . . the dealer or secured party may complete a notice of security interest . . . . The dealer or secured party may, within 10 days of the sale and delivery, mail or deliver the notice of security interest . . . to the division. The notice of security interest shall be retained by the division, until it receives an application for a certificate of title to the manufactured home or mobile home and a certificate of title is issued. The certificate of title shall indicate any security interest in the manufactured home or mobile home.

(f) In the event of a sale or transfer of ownership of a manufactured home or mobile home for which a certificate of title has been issued, which certificate of title is in the possession of the transferor at the time of delivery of the manufactured home or mobile home, the holder of such certificate of title shall endorse on the same an assignment thereof . . . and the transferor shall deliver the same to the buyer . . . .

The buyer shall then present such assigned certificate of title to the division, and a new certificate of title shall be issued to the buyer upon payment of the fee of $3.50 . . . .

If any manufactured home or mobile home is destroyed, dismantled or sold as junk, the owner shall immediately notify the division by surrendering the original or assigned certificate of title.

(g) When a person acquires a security agreement on a manufactured home or mobile

Under the KMHA, all ownership interests and security interests in manufactured homes are still registered with the Kansas Division of Vehicles.[19] That original version of the KMHA provided no mechanism for treating those titling and security interest issues differently once a manufactured home became permanently affixed to real property. To the contrary, it provided "[t]he certificate of title shall be good for the life of the manufactured home or mobile home while owned or held by the original holder of the certificate of title." [20]

In 2002, shortly after the Debtors obtained financing from Wachovia's predecessor and granted to it the real estate mortgage, amendments to the KMHA became effective. A number of new statutory sections were added. One of those, Kansas Statute § 58–4214, provides a mechanism for eliminating the certificate of title to a manufactured home and treating the manufactured home as part of the real estate on which it sits:

> home subsequent to the issuance of the original title ... such person shall require the holder of the certificate of title to surrender the same and sign an application for a mortgage title in such form as prescribed by the director. Upon such surrender, the person shall immediately deliver the certificate of title, application and a fee of $3.50 to the division. Upon receipt thereof the division shall issue a new certificate of title, showing the liens or encumbrances so created ....
> (h) In the event of the sale of a manufactured home or mobile home under the order of a court, the officer conducting such sale shall issue to the purchaser a certificate naming the purchaser and reciting the facts of the sale .... Any such purchaser shall be allowed 30 days, inclusive of weekends and holidays, from the date of sale to make application to the division for a certificate of title.
>
> Kan. Stat. Ann. § 58–4204 (2001).

(a) Whenever a manufactured home or mobile home is permanently affixed to real property, by placement upon a permanent foundation of a type not removable intact from such real property, the manufactured home or mobile home shall be considered for all purposes an improvement to real property, if the certificate of title which has been issued or is required to be issued for such manufactured home or mobile home pursuant to K.S.A. 58–4204, and amendments thereto, is eliminated pursuant to this section.... [21]

Thus, under current law, two requirements must be satisfied before a manufactured home may be considered to be an improvement to a parcel of real estate: 1) it must be permanently affixed to the property; and 2) the procedures for elimination of the manufactured home title set out in Kansas Statute § 58–4214 must be followed.

The procedure set out in § 58–4214 involves filing an application with the Divi-

**19.** In *Morris v. Citifinancial (In re Trible)*, 290 B.R. 838 (Bankr.D.Kan.2003), the court compared the KMHA with the statutory scheme as it existed when *Schroeder* was decided. The court concluded that, with respect to perfection of security interests in manufactured homes, enactment of the KMHA simply had the effect of moving the statutory authority for titling of manufactured homes and perfection of security interests in them from Chapter 8 to Chapter 58 of the Kansas Statutes. However, the requirement for notation of a security interest on the title to the manufactured home remains the same and the court concluded that notice to the Division of Vehicles of the Department of Revenue and notation of the security interest on a manufactured home's certificate of title is still the exclusive method of perfecting a security interest in a manufactured home. *Id.* at 843–44.

**20.** Kan. Stat. Ann. § 58–4204(d) (2001).

**21.** Kan. Stat. Ann. § 58–4214(a) (2005).

sion of Vehicles of the Department of Revenue. The application must include an affidavit signed by all parties with any ownership, lien, or security interest in the manufactured home, which discloses all of the interests of those various parties. In addition, any and all security interests in the manufactured home must be released.[22]

The 2002 amendments to the KMHA also included amendments to Kansas Statute § 58–4204. That section now provides: "For purposes of this section, a manufactured home or mobile home shall be considered to be personal property."[23] It also states that: "The provisions of this section shall apply to any certificate of title issued prior to January 1, 2003, which indicates that there is a lien or encumbrance on such manufactured home or mobile home."[24]

## B. Claim Preclusion

In this case, the bankruptcy judge held that the doctrine of claim preclusion applied to prevent the Trustee from asserting an interest in Debtors' Manufactured Home because the State Court foreclosure proceeding had already determined those interests.

The Trustee took no part in the State Court foreclosure action. Because the Trustee was an *in rem* party in that proceeding, he was under no obligation to assert any claim that he may have had against Wachovia as a compulsory counterclaim. The Kansas rule on counterclaims is patterned after Federal Rule of Civil Procedure 13 and, under the circumstances of this case, the Trustee lost no rights under that Rule by not filing a counterclaim with respect to his rights in the Manufactured Home.[25] Nonetheless, if the doctrine of claim preclusion applies in this matter, it could still bar the Trustee from asserting rights in the Manufactured Home.[26]

■■■ The doctrine of claim preclusion, also called res judicata,[27] "prevents relitigation of previously litigated claims and consist[s] of the following four elements: (1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits."[28]

---

22. Kan. Stat. Ann. § 58–4214(b)(3) (2005).

23. Kan. Stat. Ann. § 58–4204(a) (2005).

24. Kan. Stat. Ann. § 58–4204(b) (2005).

25. *See* Kan. Stat. Ann. 60–213 (2005); Fed. R.Civ.P. 13. The same is true with respect to Wachovia's relief from stay action. The Trustee's failure to raise the avoidability of Wachovia's lien interest in the Manufactured Home during the relief from stay proceedings does not preclude him from pursuing his claim for avoidance of Wachovia's lien in a subsequent action. *See, e.g., Cardwell v. Gilman United Fed. Credit Union (In re Carter),* 291 B.R. 211, 213–14 (Bankr.S.D.Ga.2002); *Pereira v. Lehigh Sav. Bank (In re Artha Mgmt., Inc.),* 174 B.R. 671, 676 (Bankr. S.D.N.Y.1994).

26. A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if . . . [t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

Restatement (Second) of Judgments § 22(2)(b) (1982).

27. "[T]he modern trend is to refer to claim preclusion as res judicata and issue preclusion as collateral estoppel." *Waterview Resolution Corp. v. Allen,* 274 Kan. 1016, 58 P.3d 1284, 1290 (2002) (citing 46 Am.Jur.2d Judgments § 516).

28. *Winston v. State Dept. of Soc. and Rehab. Servs.,* 274 Kan. 396, 49 P.3d 1274, 1285 (2002).

Our focus here is on the first of the claim preclusion elements: whether Wachovia's claim in the State Court foreclosure action is the same as the claims the Trustee seeks to assert in his lien avoidance action and in Wachovia's quiet title action. Since all four claim preclusion elements must be present to bar the Trustee from asserting his rights with respect to the Manufactured Home, if Wachovia fails to demonstrate the presence of any one of those elements, the defense of claim preclusion must fail.

■ The same claim would be involved in both the State Court foreclosure action and this case only if, under applicable Kansas law, the Debtors' Manufactured Home was an improvement or fixture to the Real Estate. If that were the case, then the prior foreclosure action, which adjudicated rights to the Debtors' Real Estate, would have necessarily included rights with respect to the improvements on that Real Estate. But if the Debtors' Manufactured Home is personal property, which is merely situated upon the Real Estate that was the subject matter of the foreclosure action, then the prior determination of rights in the Real Estate, without more, would not preclude subsequent litigation over interests in that personal property because the claims involved in the different actions involve completely different interests.

The record on appeal in this matter does not include a copy of either the petition or the judgment in that State Court foreclosure proceeding. However, Wachovia's Certificate of Purchase is part of the record. The Certificate of Purchase discloses that Wachovia purchased a parcel of real estate only. Wachovia purchased no personal property.[29]

## C. The Common Law of Fixtures is Inapplicable to Debtors' Manufactured Home

■ Under the common law in Kansas, a piece of personal property may become a fixture to a piece of real estate under certain circumstances.[30]

> The tests to be applied in determining whether or not personal property becomes a fixture are: (1) Annexation to the realty; (2) adaptation to the use of that part of the realty with which it is connected; (3) the intention of the party making the annexation to make the article a permanent annexation to the freehold.[31]

The Debtors' Affidavit, which is attached to Wachovia's mortgage, states that the Manufactured Home is permanently affixed to the Real Estate and that it was the Debtors' intention that the Manufactured Home be considered as an improvement to the Real Estate and covered by Wachovia's mortgage. If we were to apply the common law of fixtures to the Debtors' Manufactured Home, the Debtors' Affidavit in conjunction with the facts stipulated to by the parties[32] would necessarily lead to the conclusion that the Manufactured Home is a fixture on the Real Estate.

The Debtors granted the mortgage to Wachovia's predecessor in November of 2001, prior to the 2002 amendments to the KMHA. If we were reviewing this case under the law as it existed prior to those 2002 amendments, it would be reasonable

---

29. Certificate of Purchase, Ex. H to Petition to Quiet Title, Attach. to Notice of Removal, *in* Appellant's App. at 140.

30. *Kan. City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 562 P.2d 65, 70 (1977).

31. *Id.* (quoting *Dodge City Water & Light Co. v. Alfalfa Land & Irrigation Co.*, 64 Kan. 247, 67 P. 462, 464 (1902)).

32. Stipulations of Fact, *in* Appellant's App. at 153.

to conclude that the manufactured home titling procedures set out in the KMHA were intended by the Kansas legislature to abrogate the common law of fixtures as to manufactured homes. The KMHA was comprehensive in nature and addressed multiple issues related to manufactured housing in its various forms. The statute provided procedures for the titling of manufactured homes and for the notation of security interests on the title. It provided that the manufactured home title, once issued, was good for the life of the manufactured home. Finally, the statute, as originally enacted, was silent as to any process for eliminating that certificate of title.

Given that the original version of the KMHA provided that all ownership and security interests were to be evidenced by a certificate of title, there would seem to be no place for the operation of the common law of fixtures with respect to a manufactured home. Furthermore, the rule that statutes in derogation of the common law should be strictly construed is not applicable. Kansas law specifically provides that statutes in derogation of the common law "shall be liberally construed to promote their object." [33]

But we need not rely on those factors in making our analysis of whether or not the Manufactured Home remained personal property. The 2002 amendments to the KMHA clarify when a manufactured home is to be considered personal property and when it is to be considered a fixture. Those amendments also clarify that current provisions of the KMHA apply to the Manufactured Home.

Under the plain language of the KMHA, as it is currently constituted, manufactured homes are considered to be personal property unless the procedure for elimination of the certificate of title in Kansas Statute § 58–4214 is followed. [34] Furthermore, even though the transaction at issue in this case was entered into before that provision was added to the KMHA, § 58–4204 plainly states that its provisions are applicable to any manufactured home certificate of title issued prior to "January 1, 2003, which indicates that there is a lien or encumbrance on such manufactured home or mobile home." [35]

The bankruptcy judge's opinion states that "the certificate of title has been lost or destroyed, and the state's title record for the home shows that a different bank (probably the one whose mortgage was refinanced) is the only holder of a lien on the manufactured home." [36] That information comes from a "Vehicle Title and Owner Lien Inquiry" dated April 1, 2004. That document appears in the Appellant's Appendix [37] and discloses that a certificate of title for the Manufactured Home was issued on March 14, 1997. It also shows "BAHS Bank of America FSB" as a lienholder. Because it appears that a certificate of title was issued prior to January 1, 2003, which noted a lien against the Manufactured Home, we conclude that, under a straightforward reading of § 58–4204, its provision that manufactured homes are personal property is applicable to the Debtors' Manufactured Home.

■ It might be argued that Kansas Statute § 58–4214 merely provides an al-

---

33. Kan. Stat. Ann. § 77–109 (2005).

34. Kan. Stat. Ann. §§ 58–4204(b) & 58–4214(a) (2005).

35. Kan. Stat. Ann. § 58–4204(b) (2005).

36. Opinion Determining that Trustee Cannot Avoid Creditor's Lien on Manufactured Home at 3, *in* Appellant's App. at 177.

37. Vehicle Title and Ownership Lien Inquiry, Ex. F to Petition to Quiet Title, Attach. to Notice of Removal, *in* Appellant's App. at 140.

ternative method for causing a manufactured home to become an improvement to real estate and that its provisions may coexist with the common law with respect to fixtures. But the Court does not believe that the Kansas common law of fixtures may apply to manufactured homes in harmony with § 58–4214. To view them as simply alternatives to the same end would largely render § 58–4214 a nullity.

Section 58–4214 requires that an application for elimination of title must be made to the Division of Vehicles; that all persons having an interest in the manufactured home must sign off on an affidavit to be included with the application; that all security interests must be released before the manufactured home title may be eliminated; and that the approved application must be recorded in the office of the register of deeds.[38] Section 58–4214 sets out a process that results in a public record being made to document the change in status of a manufactured home from personal property to a fixture. That process also requires notice to, and participation of, all those who claim any interest in the manufactured home. Those very clear requirements establish with certainty the status of a manufactured home as either personal property or as a fixture. By contrast, the common law relies both on observable facts and upon the intention of the manufactured home's owner to cause personal property to become a fixture. The common law fixture elements may be present and no search of public records would disclose that fact.

The clarity of the process outlined in § 58–4214 plainly protects parties holding, or seeking to acquire, interests in manufactured homes. If the common law were also applicable to determine the fixture status of a manufactured home, that high degree of certainty would be ineffective absent a subsequent judicial determination that a given manufactured home had, or had not, become a fixture under the common law standard.

This very case vividly illustrates the point. The parties failed to follow the clear dictates of the Kansas statutes for the establishment, recording, and release of security interests in manufactured homes.[39] If Wachovia's interest had been properly documented under the KMHA, and foreclosed under the established procedures to foreclose security interests in personal property, Bank of America would not still be reflected in the Division of Vehicles' records as a lienholder and it would have been unnecessary for Wachovia to undertake a quiet title action to sort out the interests.

We conclude that, under Kansas law, the Manufactured Home was personal proper-

---

38. Kan. Stat. Ann. § 58–4214(b)–(c) (2005).

39. The Court has reviewed the documentation that Long Beach, Wachovia's predecessor, prepared at the time the loan was made to the Debtors. There can be no question that Long Beach knew of the presence of the Manufactured Home on the Real Estate because the mortgage document includes the Debtors' Affidavit concerning the Manufactured Home. Yet, Long Beach made no attempt to document its security interest in accordance with the requirements of the KMHA. Under Kansas Statute § 58–4204(g) (2001), Long Beach should have required the Debtors to surrender their certificate of title and sign an appli-

cation for a mortgage title. If the original certificate of title had been lost, § 58–4204(a) (2001) would have allowed the Division of Vehicles to issue a duplicate. The loan documentation creates the impression that Long Beach was simply unaware of the requirements of the KMHA. Instead, the Affidavit is plainly designed to satisfy the common law elements required in order to consider personal property as a fixture, ostensibly in an attempt to create a security interest in the Manufactured Home via the mortgage's boilerplate language concerning fixtures and appurtenances to the Real Estate.

ty at the time that the Debtors granted the real estate mortgage to Wachovia's predecessor. Furthermore, it was personal property at the time Wachovia received stay relief from the bankruptcy court and subsequently foreclosed its real estate mortgage.

### D. Wachovia's Relief from Stay was Limited to Foreclosure of its Real Property Interests

We cannot be entirely certain that Wachovia's State Court foreclosure action was limited to foreclosing only its interest in the Real Estate because the record on appeal does not contain copies of the State Court foreclosure petition or judgment. Nonetheless, it is clear that the bankruptcy court's order granting relief from the stay would not have allowed Wachovia to foreclose on any personal property interest because the stay relief was strictly limited to the Real Estate. "It is well established that any action taken in violation of the stay is void and without effect." [40] So, even if the State Court foreclosure action could be construed to include personal property associated with the Real Estate, any relief that Wachovia may have received in State Court beyond foreclosure of its interest in the Real Estate would be a nullity.

### E. Application of Claim Preclusion

As we noted above, in order for claim preclusion to apply in this case, the claim adjudicated in the State Court foreclosure action would have to be the same as the claims asserted by the Trustee in the current case. The bankruptcy court lifted the automatic stay with respect to the Debtors' Real Estate only, therefore, Wachovia's claim in the State Court foreclosure action was limited to its rights in the Real Estate. Wachovia's claim in its quiet title

action and the Trustee's claim in his lien avoidance action are plainly limited to rights in the Manufactured Home. Since we have determined, as a matter of Kansas law, that the Manufactured Home was personal property, and not a fixture or improvement to the Real Estate, we must conclude that the claim adjudicated by the State Court in the real estate foreclosure action could not have included the personal property interests in the Manufactured Home that were interposed in the lien avoidance and quiet title actions. As a consequence, the prior State Court adjudication and the current case involve separate and distinct claims. It follows that claim preclusion is not applicable and the Trustee is not precluded from pursuing his rights in Wachovia's quiet title action and in his lien avoidance action.

### V. CONCLUSION

Based upon the facts stipulated to in the bankruptcy court and upon information contained in the pleadings, which were filed in that court and considered by the bankruptcy judge, the relief Wachovia received in its prior foreclosure action with respect to Debtors' Real Estate was limited to the real property interests covered by its mortgage. As such, the relief granted in that action did not touch upon any interest in the Debtors' Manufactured Home, which is personal property. Consequently, the doctrine of claim preclusion is no bar to the Trustee's pursuit of whatever rights he may have in the Manufactured Home. The judgment below is reversed and the matter is remanded to the bankruptcy court for further proceedings consistent with this Opinion.

---

40. *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir.1990) (citing *Kalb v. Feuer-* stein, 308 U.S. 433, 438, 60 S.Ct. 343, 84 L.Ed. 370 (1940)).